GENERAL MOTORS CORPORATION,
Appellant,

v.

Elodia M. GARZA, David and Aleida Luera, Alfredo and Alicia Rodriguez, Carlos and Diana Hughes, Guadalupe Gonzales, Irma Lopez and Melissa Lopez, Humberto and Rosario Morin, and Shelley Cantu–Rivas, On Behalf of Themselves and All Others Similarly Situated, Appellees.

No. 04–03–00702–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 3, 2005.

A. Erin Dwyer, Andrew P. Speicher Timothy A. Daniels, Figari & Davenport, L.L.P., Dallas, Rene P. Montalvo, Law Office of Rene P. Montalvo, P.C., Rio Grande City, for appellant.

Kelly Cox Bilek, Thomas E. Bilek, Dinah Acord Weems, Hoeffner & Bilek, L.L.P., Houston, Lee S. Shalov, Shalov Stone & Bonner, LLP, New York, NY, Timothy Patton, Timothy Patton, P.C., San Antonio, for appellees.

Sitting: PAUL W. GREEN, Justice (not participating), SARAH B. DUNCAN, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION ON APPELLEES' MOTION FOR REHEARING

Opinion by PHYLIS J. SPEEDLIN, Justice.

In an opinion and judgment dated January 26, 2005, we reversed the trial court's order certifying the class and remanded the cause to the trial court for further proceedings. Appellees filed a motion for rehearing and a motion for rehearing en banc. We deny the motions for rehearing, but withdraw our opinion and judgment of January 26, 2005 and issue this opinion and judgment in its place.

In this accelerated appeal, appellant General Motors Corporation ("GM") chal-lenges the trial court's class certification and trial plan. Because we hold the class fails to meet the requirements for certification under Rule 42 of the Texas Rules of Civil Procedure, we reverse the trial court's order certifying the class and remand the cause to the trial court for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

The six named plaintiffs allege, and their expert testified, that all Chevy Malibu vehicles manufactured from 1997 through 2001 have a brake system defect that will, at some time during the life of the vehicle, cause the vehicle to pulsate when the brakes are applied. Plaintiffs also presented evidence that GM never developed an effective repair to prevent the pulsation from returning. GM, on the other hand, presented expert testimony that, although GM experienced some brake problems with Malibus of that period, not all of the vehicles developed pulsation and, of those that did, many were effectively repaired. GM also offered testimony that improper servicing or repair and the use of non-GM replacement parts could cause pulsation in vehicles that had not previously experienced a problem.

The plaintiffs seek damages based on their theory that the Malibu was defective at the time of sale; and no repair will completely eliminate the pulsation problem. Therefore, the plaintiffs claim, the damage occurred at the moment each plaintiff bought the vehicle, so the amount of damage is calculated as the difference between the value of a Malibu without a brake defect and the value of a vehicle with the brake defect. Based on this benefit-of-the-bargain measure of damages, the plaintiffs argue no individual issues exist in the case since the measure of damages is the same for each and every

purchaser of a defective Malibu. The plaintiffs state their claim as follows:

> At the time of sale, each purchaser thus received a Malibu that, because of its irreparably defective braking system, was worth less than he or she paid for it. Nothing a plaintiff, a mechanic, a dealership or anyone else did or didn't do postsale could have possibly contributed to GM's delivery of a Malibu with diminished value at the time of sale—the diminished value of the Malibu at delivery being the only damage sought by the plaintiffs who have disclaimed any recovery of consequential damages.[1]

The trial court certified a class consisting of "persons who are residents of the State of Texas ('the Class') who purchased or leased in Texas, new at retail, a 1997, 1998, 1999, 2000, or 2001 model year Chevrolet Malibu sedan." The trial court also defined a Subclass of persons who meet the definition of the Class and, additionally, are not "business consumers" (*i.e.*, not persons with assets of more than $25 million who are in the business of seeking or acquiring by purchase or lease, any goods or services for commercial or business use). The trial court identified two causes of action that may be pursued by the Class (breach of implied warranty of merchantability[2]; and breach of express warranty to repair[3]) and one cause of action that may be pursued only by the Subclass based on the above breaches of warranty (violation of the Texas Deceptive Trade Practices— Consumer Protection Act [DTPA][4]). The Subclass will thus be allowed to seek statutory treble damages under the DTPA based on GM's "knowing" breaches of warranty.

In the trial plan, the trial court identified sixteen common factual and legal questions to be answered by the jury. These can be summarized in the following categories: (1) whether there was a defect in the Malibu brake system and if so, whether there was a safer alternative design; (2) whether GM breached its implied warranty of merchantability and its express warranty to repair; (3) whether the defect caused the Class members to pay more than fair market value; (4) the difference between the amounts paid and the fair market value of the defective vehicles; (5) whether GM had actual awareness of the defect, the ineffectiveness of repairs, and the resulting diminution in value; and (6) the amount of punitive damages under the DTPA. If the jury finds a defect, the trial plan calls for the jury to determine the vehicle's diminished value for each model year. After the jury determines liability and damages, the Class will be determined by a claim form requesting the following information:

(1) the name, address, and identity of the claimant;

(2) the VIN number and model year of the vehicle;

(3) the date of purchase or lease and the name of the dealer;

(4) the state of the claimant's residence at the time of purchase;

(5) the cost of purchase or lease;

(6) whether the vehicle was purchased new or used; and

---

1. The plaintiffs argue "the trial court correctly recognized that GM's post-sale 'defenses' (e.g., contributory negligence, failure to mitigate) are not relevant to the plaintiffs' liability/damage theory."

2. Tex. Bus. & Com.Code Ann. § 2.314 (Vernon 1994).

3. Tex. Bus. & Com.Code Ann. § 2.313(a) (Vernon 1994).

4. Tex. Bus. & Com.Code Ann. § 17.50(a)(2) (Vernon 2002).

(7) information to determine whether the claimant is a business consumer.

The trial plan contemplates that the only individual issue will be whether a particular member of the Class is a business consumer or not.

GM asserts the trial court abused its discretion in certifying the Class because: (1) the trial court failed to correctly analyze and apply the law to the plaintiffs' causes of action; (2) the trial plan is fatally flawed; (3) plaintiffs failed to establish commonality or typicality; (4) the named plaintiffs are not adequate class representatives; (5) class action is not a superior method of handling the claims; and (6) damages cannot be determined on a class basis.

### STANDARD AND SCOPE OF REVIEW

■ Rule 42 of the Texas Rules of Civil Procedure governs class certification. TEX.R. CIV. P. 42. "All class actions must satisfy four threshold requirements: (1) numerosity ('the class is so numerous that joinder of all members is impracticable'); (2) commonality ('there are questions of law or fact common to the class'); (3) typicality ('the claims or defenses of the representative parties are typical of the claims or defenses of the class'); and (4) adequacy of representation ('the representative parties will fairly and adequately protect the interests of the class')." *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex.2000) (quoting TEX.R. CIV. P. 42(a)). In addition, class actions must satisfy at least one of the subdivisions of Rule 42(b). *Id.* In this case, plaintiffs assert the class action satisfies former Rule 42(b)(4), now Rule 42(b)(3), which requires two findings: (1) common questions of law or fact predominate over questions affecting individual members; and (2) class treatment is " 'superior to other available methods for the fair and efficient adjudication of the controversy'." *Id.* (quoting former TEX.R. CIV. P. 42(b)(4)). "The test for predominance is not whether common issues outnumber uncommon issues but ... 'whether common or individual issues will be the object of most of the efforts of the litigants and the court.' " *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693 (Tex.2002) (quoting *Bernal*, 22 S.W.3d at 434).

■ On appeal, we review the trial court's decision to certify a class under the abuse of discretion standard. *Id.* at 691. Accordingly, although we do not indulge every presumption in favor of the trial court's ruling, "some of [the trial court's] determinations—like those based on its assessment of the credibility of witnesses, for example—must be given the benefit of the doubt." *Id.* "[A]ctual, not presumed, conformance with [the rule] remains ... indispensable." *Id.* (quoting *Bernal*, 22 S.W.3d at 435). "Compliance with Rule 42 must be demonstrated; it cannot be presumed." *Id.; see generally* TEX.R. CIV. P. 42.

### DISCUSSION

■ The class action serves to "eliminate or reduce the threat of repetitive litigation," "prevent inconsistent resolution of similar cases," and provide a means of redress for individual claims too small to make independent actions economically feasible. *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452 (Tex.2000). Properly used, a class action saves resources for both the courts and the parties by allowing class-wide issues to be tried in an economical fashion. However, the class action format "must not unduly restrict a party from presenting viable claims or defenses without that party's consent." *Bernal*, 22 S.W.3d at 435 (citing TEX.R. CIV. P. 815; TEX. GOV'T CODE ANN. § 22.004(a)); *see also Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 362 (Tex.App.-Houston [14th Dist.]

2003, no pet.). Further, class certification does not eliminate the need for the plaintiffs to prove every element of their claims. As the Texas Supreme Court has stated:

> [E]vidence insufficient to prove [a claim] in a suit by an individual does not become sufficient in a class action simply because there are more plaintiffs. Inescapably individual differences cannot be concealed in a throng. The procedural device of a class action eliminates the necessity of adducing the same evidence over and over again in a multitude of individual actions; it does not lessen the quality of evidence required in an individual action or relax substantive burdens of proof.

*Schein*, 102 S.W.3d at 693–94. Accordingly, we must review the elements of the plaintiffs' claims to determine whether, in light of the evidence necessary to prove or defeat the claims, class certification impermissibly permits the plaintiffs to recover without proving each element of their claims or impermissibly deprives GM of the opportunity to present legitimate defenses.

### (1) Implied Warranty of Merchantability

 To establish a breach of the warranty of merchantability, a plaintiff must first show the product has a defect that renders it unfit for its ordinary purpose, *i.e.*, the product lacks something necessary for it to be adequate. *Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998); *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex.App.-Tyler 2003,

no pet.). If "a product is shown to be unmerchantable, a plaintiff must then establish that the defect caused him to suffer injury." *Polaris*, 119 S.W.3d at 336. "A product that performs its ordinary function adequately does not breach the implied warranty of merchantability merely because it does not function as well as the buyer would like, or even as well as it could." *Trobaugh Constr., Inc. v. Home Depot, USA, Inc.*, No. 01-02-00340-CV, 2003 WL 23000025, at *3 (Tex.App.-Houston [1st Dist.] Dec. 23, 2003, no pet.) (citing *Gen. Motors*, 966 S.W.2d at 57). Instead, the plaintiff must show that the defect caused injury.[5] *See id.*

In this case, the trial court's trial plan assumes that, if a jury finds a defect and finds that the defect cannot be effectively repaired,[6] a single damage amount can be determined for each year the Malibu was sold. We disagree. The trial court's approach does not require the plaintiffs to prove causation is the same for each individual in the Class nor does it permit GM to disprove damages for any given individual. Review of the testimony clearly establishes that individual questions regarding causation outweigh the common issues. For example, even if a jury found that the brakes on all Malibus will pulsate at some time, the expert testimony establishes that it is impossible to predict when the pulsation will occur during the life of the vehicle. Even a cursory examination of the testimony of the named plaintiffs shows that each of them noticed pulsation at different mileages, some at very low mileage,

---

5. Plaintiffs claim, and the trial court ruled, if a breach of warranty is shown under the DTPA, it need only be the producing cause of the injury. However, producing cause is not proved absent proof of cause in fact, that is, that the defect was a substantial factor in bringing about the injury. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995).

6. The plaintiffs claim that, a repair that temporarily relieves the pulsation is not "effective" because the pulsation will eventually return. They thus claim not that the pulsation cannot be fixed but that the repair may or may not last the life of the vehicle.

some at relatively high mileages.[7] The experts also appear to agree that at least one of the named plaintiffs never experienced defect-induced pulsation but nonetheless complained of a similar brake problem with a completely unrelated cause. The trial court's class definition and trial plan do not allow GM to challenge the claims of those individuals who either never experienced pulsation or knew of the brake problem but did not care enough to bring it back for repair within a reasonably short period of time.[8]

In spite of the unique experiences of even the named plaintiffs, the trial court certified a Class consisting of all persons who ever purchased a new Malibu. Even if the trial court tried to limit the Class to owners who had experienced pulsation, individual questioning would be necessary to determine whether these owners actually experienced pulsation or some other type of wear-related brake problem. For those plaintiffs without documentation of their complaints or repairs, credibility assessments would be required. Although only individual questioning would reveal these distinctions among the Class members, individual questioning is not permitted or contemplated by the trial plan.

### (2) Express Warranty to Repair

 To establish a breach of the express warranty to repair, a plaintiff

must show not only that the product was presented to the defendant for repair but also that the defendant failed or refused to repair the defect. *See Bunting v. Fodor*, 586 S.W.2d 144, 145 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ); *see also U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 198–99 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). Moreover, "[r]eliance is also not only relevant to, but an element of proof of, plaintiffs' claims of breach of express warranty (to a certain extent)...." *See Schein*, 102 S.W.3d at 686 (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex.1997)). Generally, because reliance requires an individual finding regarding each class member, class certification is improper in cases like this in which reliance is an element of the cause of action. *See id.* at 686–87; *Ford Motor Co. v. Ocanas*, 138 S.W.3d 447, 453 (Tex.App.-Corpus Christi 2004, no pet.).

GM also argues the trial plan prohibits it from presenting a defense based upon the contractual limitation restricting the remedy for breach of warranty to "performance of repairs and needed adjustments."[9] The trial court held the limitation was too inconspicuous to be valid. But this ruling ignores whether individual Class members had actual knowledge of the limitation. *See Cate v. Dover Corp.*, 790 S.W.2d 559, 561–62 (Tex.1990); *LaBel-*

---

7. One of the plaintiffs testified his vehicle exhibited pulsation when he took it for a test drive, but he purchased it anyway. This plaintiff testified the salesman told him it would go away; but, even though the pulsation allegedly continued, the plaintiff did not take his vehicle to be repaired for brake trouble until it had over 39,000 miles on it.

8. GM argues it has numerous defenses that might be asserted against individual class members, including improper maintenance, misuse of the brakes, use of non-GM parts, no pulsation experienced, or pulsation caused by something that occurred after the vehicle left

the factory. The trial court's plan does not allow GM to come forward with these defenses because it assumes each purchaser experienced damage at the moment of purchase.

9. The plaintiffs claim that the limitation is meaningless if they establish GM never developed an effective repair. However, even if the plaintiffs establish that GM's repair will hold for only 30,000 miles, some people may be satisfied to return the vehicle for free repair every two or three years. Thus, establishing that the repair will not last the life of the vehicle does not necessarily establish breach of the warranty to repair.

*la v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 132 (Tex.App.-Amarillo 1997, writ denied). Only an individual inquiry will reveal whether a particular Malibu owner had actual notice and was therefore bound by the limitation of remedy.

The trial court's plan permits the plaintiffs to establish a uniform classwide measure of damages while denying GM the opportunity to establish differences among the Class members. A class action cannot be used to circumvent an element of damages or prevent a defendant from fairly presenting viable defenses. *See Ocanas*, 138 S.W.3d at 453 (individual issues predominate where class members' actual knowledge is an integral part of the defendant's defense).

### (3) Rule 42 Requirements

The plaintiffs argue that individual questions about the Class members' experiences are irrelevant because the damages arose at the moment of purchase. In support of their argument, the plaintiffs cite primarily to two computer defect cases. *See Compaq Computer Corp. v. LaPray*, 79 S.W.3d 779, 792 (Tex.App.-Beaumont 2002), *rev'd on other grounds*, 135 S.W.3d 657 (Tex.2004); *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 609 (Tex.App.-Texarkana 1995, writ dism'd). In both *Compaq* and *Manning*, software purchasers complained that a particular feature was defective and, rather than seeking individ-

ual consequential damages, asked that the software manufacturer be required to repair the feature or supply an upgrade that would make the feature work as promised. *See Compaq*, 79 S.W.3d at 789. In both cases, the courts held the damages sought were identical for each purchaser of the software but distinguished computer defects from alleged vehicle or tire defects.

> Software, however, is not like tires or cars. Tires and cars have a distinctly limited usable life. At the end of the product's life, the product and whatever defect it may have had pass away. If a defect does not manifest itself in that time span, the buyer has gotten what he bargained for.[10]

*Compaq*, 79 S.W.3d at 792 (citing *Manning*, 914 S.W.2d at 609).

In this case, the purchasers of Malibus could drive their cars with no problem until the pulsation manifested, if it ever did. For purchasers who never experienced a problem during the time they owned the car, they got what they paid for—a vehicle that provided transportation with a brake system that safely stopped the car. And, since repair was never rendered, they never experienced a breach of warranty to repair. Similarly, purchasers who bought a Malibu knowing of the alleged brake defect have no damages even under the plaintiffs' damage theory.[11]

---

**10.** The Beaumont and Texarkana Courts of Appeals then explained why software defects may be more amenable to class action review:

> Software's useful life, however, is indefinite. Even though the defect is not manifest today, perhaps because the user is not using the [advertised] feature, it may manifest itself tomorrow. The only way for [a] buyer to avoid the possibility of injury is to pay for the upgrade, never use the [advertised] feature, or use another operating system. The buyer never gets what he bar-

gained for, i.e., an operating system with an effective [advertised] feature.
*Compaq*, 79 S.W.3d at 792 (citing *Manning*, 914 S.W.2d at 609).

**11.** We note the Texas Supreme Court recently recognized that Texas courts are divided in cases like this on whether plaintiffs can recover damages for unmanifested defects. *See Compaq*, 79 S.W.3d at 791–92 & n. 8. We do not address that issue here because we hold individual issues predominate even if we accept plaintiffs' theory of damages.

We recognize that if the Malibu brake system is defective, the defect may well exist in each of the Class members' vehicles—a significant common issue. However, that issue alone does not predominate over individual issues. *See Bernal*, 22 S.W.3d at 435.

> The test for predominance is not whether common issues outnumber uncommon issues but, as one court stated, "whether common or individual issues will be the object of most of the efforts of the litigants and the court." If, after common issues are resolved, presenting and resolving the individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate. Ideally, a "judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim."

*Id.* at 434 (citations omitted); *see also Ocanas*, 138 S.W.3d at 452. As demonstrated above, individual issues in these cases will consume most of the parties' and the trial court's efforts. We therefore hold the plaintiffs failed to establish either that common issues predominate or that a class action is a superior method for handling these claims.

### CONCLUSION

Because the trial court abused its discretion by certifying a class that does not meet the requirements of Rule 42, we reverse the trial court's order certifying the Class and remand for further proceedings consistent with this opinion.