Pete **EVERETT** and Marcella Everett, Individually and on behalf of Others Similiarly Situated, Appellants,

v.

**TK–TAITO, L.L.C.**, Takata Seat Belts, Inc., American Isuzu Motors, Inc., Isuzu Motors of America, Inc., and Nissan North America, Inc., Appellees.

No. 2–04–181–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 3, 2005.

The Branch Law Firm, and Turner W. Branch, Albuquerque, NM, Dottie Murphy, Wichita Falls, Law Office of Stephen Gardner, PC, and Stephen Gardner, for Appellants.

Hartline, Dacus, Barger, Dreyer & Kern, L.L.P., and Jeffrey J. Cox, Dallas, and Carpenter & Lipps LLP, and Michael H. Carpenter, Colombus, OH, for Takata Seat Belts, Inc. and TK–Taito, L.L.C.

Hartline, Dacus, Barger, Dreyer & Kern, L.L.P., and Kurt C. Kern, and David P. Stone, Dallas, for Isuzu Motors of America, Inc.

Sedgwick, Detert, Moran & Arnold LLP, and E. Paul Cauley, Jr., Dallas, for Nissan North America, Inc.

PANEL A: CAYCE, C.J.; HOLMAN and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

The sole issue we address in this appeal is whether Appellants Pete and Marcella Everett alleged an injury sufficient to establish their standing to assert certain causes of action on their own behalf and on behalf of "[a]ll persons who own a vehicle equipped with TK–52 Buckles ... that is registered in Texas, except those persons who have made claims against any defendant for personal injury damages allegedly arising out of seatbelt malfunction" or whether, as asserted by the defendant Appellees,[1] the Everetts lack standing indi-

---

1. The named defendants in the underlying lawsuit are Takata Corp.; TK–Taito, L.L.C.; Takata Seat Belts, Inc.; American Isuzu Motors, Inc.; Isuzu Motors of America, Inc.; and Nissan North America, Inc. The appellate brief filed by TK–Taito, L.L.C. and Takata Seat Belts, Inc. ("the Takata defendants") indicates that Takata Corp. "has not been served and has not appeared in this action." The appellate brief filed by Isuzu Motors America, Inc. states that it was improperly named as "Isuzu Motors of America, Inc.,"

vidually and as class representatives because they have suffered no injury that is redressable through their pleaded claims. The trial court granted Appellees' motions to dismiss the statewide class action lawsuit after determining that the Everetts lacked standing because they had not alleged an injury in fact. Because no allegations exist that the TK–52 seat belt buckles in Marcella's 1991 Isuzu Rodeo or in Pete's 1994 Nissan pickup have malfunctioned, because Pete does not seek to recover personal injury damages that he allegedly suffered from a TK–52 seat belt, and because neither Marcella nor Pete has alleged an economic injury that is redressable through their pleaded claims, we hold that the trial court did not err by dismissing the Everetts' claims for lack of standing. Consequently, we will affirm the trial court's judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Everetts sued the defendants based on the production and sale of defective TK–52 buckles, ultimately alleging causes of action for breach of warranty, fraudulent concealment, violations of the Texas Deceptive Trade Practices Act ("DTPA"), constructive trust, money had and received, and exemplary damages. The Everetts pleaded that their vehicles, a 1994 Nissan pickup owned by Pete and a 1991 Isuzu Rodeo owned by Marcella, came factory-equipped with TK–52 buckles.[2] Although Pete alleges that he was physically injured by a defective Takata seat belt buckle,[3] he specifically does not seek damages in this suit for those physical injuries. According to the pleadings, Marcella's seat belt buckles have not failed or caused her physical injury.

The Everetts alleged that Takata supplies the TK–52 buckles to its manufacturer customers and that Takata knew as early as the pre-production phase of the TK–52 buckles that the buckles—by virtue of a defective design—were susceptible to partial engagement, leaving the seat belt user essentially unrestrained. The Everetts pleaded that after a Honda Accord crash test documented the TK–52's partial engagement problem, Takata admitted a design defect existed and represented that it had developed a corrective countermeasure that would be incorporated into future TK–52 buckles. Several recalls issued concerning the defective buckles, but the Everetts maintain that not all of the defective buckles were recalled and that a substantial number of the buckles with identical defective internal design remain in use today, presenting an unreasonable risk of harm to users by virtue of the buckles' propensity to partially engage. The Everetts, on their own behalf and as class representatives, alleged economic injury damages, arguing that purchasers of vehicles fitted with the TK–52 buckles did not

that American Isuzu Motors Inc. no longer exists, and that Isuzu Motors America, Inc. is the successor in interest to American Isuzu Motors Inc. References herein to "the defendants" or to "the Takata defendants" refer only to those entities that were actually served and that are still in existence.

2. The pleadings do not state when or where the Everetts purchased these automobiles or whether they were new or used when they were purchased. Nor was this information disclosed at the nonevidentiary hearing on Appellees' motions to dismiss.

3. The pleadings do not indicate whether Pete's injury occurred from the failure of the TK–52 buckle in his vehicle or whether he was a passenger in a different vehicle when he received the injuries. The pleadings state, "Pete Everett owns a 1994 Nissan Pickup, which came factory-equipped with TK–52 Buckles. He was physically injured by a defective Takata seat-belt, due to the Defect described herein. He does not, however, seek damages for his physical injury."

receive the benefit of the bargain that they made in the purchase of their vehicles and will suffer $500 per vehicle cost-of-replacement damages.

The defendants filed answers and numerous motions, including motions to dismiss for want of jurisdiction. Following a nonevidentiary hearing, the trial court dismissed the Everetts' claims, stating that the Everetts "lack standing to pursue this action because they have not alleged that they have an 'injury in fact.' "[4] The Everetts appeal from this dismissal judgment.

### III. STANDARD OF REVIEW

Subject matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex. 1993). Standing is implicit in the concept of subject matter jurisdiction. *Id.* Whether a party has standing to maintain a suit is a question of law. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002); *In re A.J.L.,* 108 S.W.3d 414, 419 (Tex.App.-Fort Worth 2003, pet. denied). To have standing, the pleader bears the burden of alleging facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Ass'n of Bus.,* 852 S.W.2d at 446. However, the pleader need not preview their case on the merits simply to establish jurisdiction. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554–55 (Tex.2000). In reviewing a standing ruling, an appellate court construes the petition in favor of the pleader. *Id.; Tex. Ass'n of Bus.,* 852 S.W.2d at 446.

### IV. COMMON LAW STANDING AND STATUTORY STANDING

Standing to sue may be predicated upon either statutory or common law authority. *See, e.g., Williams v. Lara,* 52 S.W.3d 171, 178–79 (Tex.2001); *Inman,* 121 S.W.3d at 869. The common law standing rules apply except where standing is statutorily conferred. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984); *see also Williams,* 52 S.W.3d at 178; *In re Sullivan,* 157 S.W.3d 911, 915–16 (Tex.App.-Houston [14th Dist.] 2005, orig. proceeding) (discussing separate "statutory standing criteria"). To establish common law standing, a plaintiff must show "a distinct injury to the plaintiff and 'a real controversy between the parties, which ... will be actually determined by the judicial declaration sought.' " *Brown v. Todd,* 53 S.W.3d 297, 305 (Tex.2001). In conferring statutory standing, however, the legislature may by statute exempt litigants from proof of the "special injury" required to establish common law standing. *See, e.g., Tex. Ass'n of Bus.,* 852 S.W.2d at 472 (Dogget, J. Concurring and dissenting) (providing examples—including the Texas Declaratory Judgments Act—of statutory standing granted in the absence of a personal damage, i.e., an injury in fact).

---

4. Before entering the dismissal order, the trial court explained its ruling in a letter to the parties and expressly rejected application of *DaimlerChrysler Corp. v. Inman,* 121 S.W.3d 862 (Tex.App.-Corpus Christi 2003, pet. granted), the primary case relied upon by the Everetts in this appeal:

> Although the Plaintiffs' [sic] put great stock in the 13th Court of Appeals'[s] opinion in *Inman,* I find that Court's analysis to be rather one-sided.

> The Court seems to go to great lengths to stretch Inman's claims of injury so that those claims become injuries in fact, thereby giving Inman standing in that case.

> I am neither willing nor able to do that in the instant case. Clearly, an actual injury—an injury in fact—is required in order for a Plaintiff to have standing to sue. As pointed out by Justice Jerry E. Smith, in *Rivera v. Wyeth–Ayerst Laboratories,* [283 F.3d 315, 319 (5th Cir.2002),]"[m]erely asking for money does not establish an injury in fact."

When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis. *Inman*, 121 S.W.3d at 869. The plaintiff must allege and show how he has been injured or wronged within the parameters of the language used in the statute. *Scott v. Bd. of Adjustment*, 405 S.W.2d 55, 56 (Tex.1966).

## V. THE PARTIES' POSITIONS

The Everetts argue that they alleged an injury in fact—an economic injury—by pleading that their TK–52 buckles are defective, are not effective restraints, pose serious safety risks, and have caused them concrete economic damages in the form of loss of the benefit of their bargain in purchasing their vehicles and the prospective cost of replacing the defective buckles. The defendants claim that the trial court correctly determined that the Everetts lacked standing because the Everetts have suffered no injury in fact. In addition, the Takata defendants argue that the Everetts lack standing because their suit is a de facto Federal Safety Act enforcement action.[5] Isuzu separately argues that the Everetts have failed to allege any failure in any Isuzu product because the seat belts in Marcella's Isuzu Rodeo have not manifested any defect; thus, the Everetts do not have standing to pursue any cause of action against Isuzu.

## VI. THE EVERETTS PLEADED AN UNMANIFESTED DEFECT

The Everetts' live pleading, their second amended original petition, seeks recovery of economic damages—loss of benefit of the bargain and cost of replacement dam-

ages—for the "defective" seat belt buckles installed in their vehicles. They pleaded that the TK–52 buckles "all have the same manufacturing defect," which is "inherent in the design of the buckle, in that it *may* only partially engage under ordinary usage conditions" and "*may* release during a collision."[6] They further alleged that deviation from manufacturing specifications "increases *the propensity* for TK–52 Buckles to engage only partially." According to the Everetts, consumers complained to the National Highway Traffic Safety Administration about the "inherently defective design of the TK–52 Buckles and its *propensity* to partially engage in actual use," but the defendants mischaracterized these complaints as related to chipped ABS plastic release buttons. Takata allegedly has known that under a variety of actual use conditions "partial engagement *can* occur."

The Everetts do not plead that the TK–52 buckles in their vehicles have ever partially engaged when they attempted to latch them nor do they plead that the buckles have provided them with insufficient restraint or have come unlatched while they were driving. They likewise do not plead that in an accident or under stress the buckles will inevitably fail. Thus, they have pleaded that an unmanifested defect—a propensity to partially latch and to thereby provide insufficient restraint—exists within the TK–52 buckles in their vehicles. *Accord Gen. Motors Corp. v. Garza*, No. 04–03–00702–CV, 179 S.W.3d 76, 80–81, 2005 WL 1812581, at *3–4 (Tex.App.-San Antonio Aug.3, 2005, no pet.) (indicating, in appeal from class certification order, that alleged defect in brake

---

**5.** Because we conclude that the Everetts have not pleaded facts establishing an injury that is redressable under the liability theories they have pleaded, we do not reach this alternative ground for the trial court's dismissal. *See* TEX.R.APP. P. 47.1 (stating that appellate court

need only address every issue raised and necessary for final disposition of appeal).

**6.** The emphasis in these quotes from the Everetts' second amended original petition is ours.

system that manifested and caused brakes to pulsate in some, but not all, vehicles was unmanifested defect until it occurred).

## VII. CURRENT LAW REGARDING WHETHER ECONOMIC HARM FROM AN UNMANIFESTED PRODUCT DEFECT IS AN "INJURY" CONFERRING STANDING

We begin our analysis by drawing a distinction between manifested product defects and unmanifested product defects—like the one alleged by the Everetts—because most of the cases relied upon by the Everetts involve manifested defects, not unmanifested defects; therefore, those cases are not controlling. *See McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 547 (5th Cir.2003) (involving manifested defect—motor homes required supplemental brakes to safely tow 3,500 pounds); *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 451 (5th Cir.2001) (involving manifested defect—boat was constructed of wood and fiberglass but was represented to be all fiberglass); *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 78 (Tex.1977) (involving manifested defect—defectively constructed mobile home); *Nissan Motor Co. v. Fry*, 27 S.W.3d 573, 579 (Tex.App.-Corpus Christi 2000, pet. denied) (op. on reh'g) (involving manifested defect—seat belt system was defective because it lacked adequate warnings that separate manual lap belt must be used to avoid injury in accident); *Hi–Lo Auto Supply, L.P. v. Beresky*, 986 S.W.2d 382, 386 (Tex.App.-Beaumont 1999, orig. proceeding) (involving manifested defect—old or used batteries were being sold as new for full price); *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 606, 609 (Tex.App.-Texarkana 1995, writ dism'd) (involving manifested defect—software defect in data compression feature required purchase of an upgrade in order to make feature function properly), *abrogated on other grounds by Spector v. Norwegian Cruise Line Ltd.*, 2004 WL 637894 (Tex.App.-Houston [1st Dist.] Mar. 30, 2004, no pet.) and *Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302 (Tex.App.-Texarkana 2004, no pet.).

■■■ The Texas Supreme Court has not yet addressed which claims, if any, a plaintiff possesses standing to assert based on an unmanifested product defect that causes only economic damages. *See Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 679, 681 n. 15 (Tex.2004) (recognizing that the law in Texas is unclear regarding whether to permit claims for unmanifested defects). Our sister courts, as well as out-of-state courts, have reached different conclusions concerning which, if any, theories of recovery are available to a plaintiff seeking economic benefit-of-the-bargain or cost-of-replacement damages based on an unmanifested product defect. *See, e.g., Inman*, 121 S.W.3d at 881, 885 (holding plaintiffs possessed standing to assert claims for negligence, negligent misrepresentation, DTPA violations, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose seeking economic damages based on unmanifested defect);[7] *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 338 (Tex.App.-Tyler 2003, no pet.) (holding plaintiff lacked standing to assert claims for breach of implied warranty of merchantability and for violation of Magnuson Moss Act when alleged design defect had not caused an injury); *Wallis v. Ford Motor Co.*, No. 04–506, —— S.W.3d ——, 2005 WL 1120218 (Ark. May 12, 2005) (holding plaintiff lacked standing to assert claims for common law fraud and for violation of

---

**7.** The supreme court heard argument in this case on January 6, 2005.

the Arkansas equivalent of the DTPA for an unmanifested design defect); *Collins v. DaimlerChrysler Corp.*, 894 So.2d 988, 990 (Fla.Dist.Ct.App.2005) (holding plaintiff possessed standing to assert statutory claim under Florida equivalent of the DTPA for alleged economic damages based on unmanifested seat belt defect). The determination of whether a plaintiff possesses standing to assert a particular claim depends on the facts pleaded and the cause of action asserted. *See, e.g., M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 707–08 (Tex.2001) (analyzing standing in the context of asserted mail fraud claim); *Inman*, 121 S.W.3d at 871, 881 (analyzing standing in the context of each claim asserted); *Coghlan*, 240 F.3d at 453 (holding, "[o]ur task is to evaluate each of the Coghlans' state law claims for the availability of benefit of the bargain relief"). Consequently, we now examine in turn the causes of action pleaded by the Everetts. We apply either common law standing rules or statutory standing rules, as applicable, to determine whether the Everetts' allegations of economic harm through loss of the benefit of their bargain in purchasing their vehicles and the prospective cost of replacing the defective buckles constitute allegations of injuries that are redressable through any of their pleaded liability theories.

## VIII. APPLICATION OF THE LAW TO THE EVERETTS' PLEADINGS

### A. Breach of Implied Warranty of Merchantability

▮ The Everetts' second amended original petition purports to plead a cause of action against Appellees for breach of

the implied warranty of merchantability.[8] *See* TEX. BUS. & COM.CODE ANN. § 2.314 (Vernon 1994). Because this is a statutory cause of action, we apply statutory standing principles. The statutory elements of the Everetts' breach of implied warranty of merchantability are (1) that their vehicles' seat belt buckles are defective as unfit for their purpose because of a lack of what was required for adequacy, (2) that the alleged defect existed when the buckles left the manufacturer's and the seller's possession, and (3) that the alleged defect proximately caused the injuries for which the Everetts seek damages. *See id.* §§ 2.314 & cmt. 13, 2.607(c)(1), 2.714–.715; *see also Roventini v. Ocular Scis., Inc.*, 111 S.W.3d 719, 723 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (citing *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex.1989)); *Trobaugh Constr., Inc. v. Home Depot, USA, Inc.*, No. 01–02–00340–CV, 2003 WL 23000025, at *3 (Tex.App.-Houston [1st Dist.] Dec. 23, 2003, no pet.) (mem.op). So, to establish statutory standing to assert a breach of the implied warranty of merchantability claim, the Everetts were required to plead that the alleged defect in the TK–52 buckles proximately caused each of them injury. *See* TEX. BUS. & COM.CODE ANN. § 2.314 & cmt. 13 ("In an action based on breach of warranty, it is of course necessary to show ... that the breach of the warranty was the proximate cause of the loss sustained"). We examine the Everetts' pleadings to determine whether, construed liberally and taken as true, the facts pleaded establish that the alleged defect in the TK–52 buckles proximately caused them injury, thereby establishing their statutory standing to

---

**8.** The Everetts' reply brief, in places, characterizes their pleading as asserting a breach of the implied warranty of fitness for a particular purpose; but their second amended petition asserts only breach of the implied war-

ranty of merchantability. Consequently, we do not analyze the Everetts' standing to assert a claim for breach of the implied warranty of fitness for a particular purpose.

bring suit for breach of the implied warranty of merchantability.

In determining whether the allegations show that the defect caused injury, we recognize that the defect in an implied warranty of merchantability case may not be the same as the defect in a strict products liability case. *Plas–Tex,* 772 S.W.2d at 443–44.[9] In the context of an implied warranty of merchantability case, the word "defect" means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy. *Id.* at 444; *Brewer,* 966 S.W.2d at 57; *Garza,* 179 S.W.3d at 80–81, 2005 WL 1812581, at *3–4. In the area of strict products liability, however, the word "defect" means a condition of the product that renders it unreasonably dangerous. *Plas–Tex,* 772 S.W.2d at 444. A defective design may render a product unreasonably dangerous for strict liability purposes, but may not render a product unfit for the ordinary purposes for which it is used if the product works properly when used for its ordinary purpose. *Accord Sears, Roebuck & Co. v. Kunze,* 996 S.W.2d 416, 422 (Tex.App.-Beaumont 1999, pet. denied) (involving products liability

suit based on unreasonably dangerous radial saw—defective for lack of a lower blade guard—but obviously fit for sawing, the ordinary purpose for which it was used).

The Everetts pleaded a breach of the implied warranty of merchantability cause of action, but they pleaded a products liability defect—a defective design of the buckle giving it a *"propensity* to partially latch and *potentially* provide insufficient restraint during a crash."[10] [Emphasis added.] A product that performs its ordinary function adequately is not defective in the implied warranty of merchantability context simply because it does not function as well as the buyer would like, or even as well as it could. *Brewer,* 966 S.W.2d at 57; *Trobaugh Constr., Inc.,* 2003 WL 23000025, at *3. That is, for a defect to cause redressable damages in a breach of the implied warranty of merchantability action, it must cause the product not to function adequately in the performance of its ordinary function for the plaintiff. *Compare Microsoft Corp.,* 914 S.W.2d at 610 (holding software that *could not* successfully perform data compression—regardless of whether plaintiff at-

9. The supreme court in *Plas–Tex* expressly instructed, "Practitioners—as well as the courts—should exercise care to see that these terms [the different meanings of the term "defect" in breach of the implied warranty of merchantability cases versus products liability cases] are used precisely." *Id.* Subsequently, chapter 82 of the civil practice and remedies code was enacted, and it purports to utilize the term "defect" interchangeably when the suit is "against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product." Tex. Civ. Prac. & Rem.Code Ann. § 82.001 (Vernon 2005); *see also Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661, 664–66 (Tex.1999) (recognizing different definitions of defect were "functionally equivalent" in crashworthiness case involving claim for personal injuries). Because

this case does not involve claims for personal injury, death, or property damage, we apply the *Plas–Tex* definition of defect applicable to suits for breach of the implied warranty of merchantability. *See Gen. Motors Corp. v. Brewer,* 966 S.W.2d 56, 57 (Tex.1998) (applying *Plas–Tex* definition of defect to suit for breach of implied warranty of merchantability).

10. The Everetts pleaded, in part, "Takata has known that under a variety of actual use conditions, that partial engagement can occur" and "Takata has allowed millions of TK–52 Buckles to be sold worldwide, all of which have an identical internal design, and all of which suffer from the same *unreasonable risk."* [Emphasis added.]

tempted to use this feature—did not or would not perform adequately in its ordinary function so that a "defect" existed causing injury and loss of benefit-of-the-bargain damages) *with Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) (holding that when drug *could and did* perform adequately in its ordinary function for plaintiffs, plaintiffs' breach of the implied warranty of merchantability claim seeking only benefit-of-the-bargain damages did not plead an injury in fact); *see also Polaris Indus.*, 119 S.W.3d at 340–41 (holding that when "jet ski" could and did perform adequately in its ordinary function, plaintiffs' breach of the implied warranty of merchantability claim seeking only benefit-of-the-bargain damages did not plead an injury in fact); *In re Air Bag Prods. Liab. Litig.*, 7 F.Supp.2d 792, 802–03 (E.D.La.1998) (recognizing claim for breach of implied warranty of merchantability requires that the alleged defect has or would manifest itself during the product's normal use).

■ Here, the Everetts' vehicles are many years old; Pete's Nissan truck is a 1994 model and Marcella's Isuzu Rodeo is a 1991 model. Although the vehicles are over a decade old, the Everetts do not allege that the TK–52 buckles in their vehicles have ever only partially latched when they latched them or have ever provided them with insufficient restraint. They instead seek economic damages based on the "buckles' *propensity* to partially latch and *potentially* provide insufficient restraint during a crash." [Emphasis added.] To cause redressable injuries in the breach of the implied warranty of merchantability context, a "defect" must either have manifested during the product's normal use or such manifestation must be inevitable when the defective feature of the product is used—such as the software data compression feature in *Man-*

*ning.* 914 S.W.2d at 610; *see also In re Gen. Motors Corp. Prods. Liab. Litig.*, 966 F.Supp. 1525, 1532–33 (E.D.Mo.1997) ("The implied warranty of merchantability can only be breached when the 'vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation.' ") (quoting *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291, 44 Cal.Rptr.2d 526, 529–30 (1995)). Although the Everetts' vehicles are over a decade old, the defect that they allege has caused them economic injuries has not manifested itself, nor do the Everetts claim that it will inevitably manifest itself.

Instead, the Everetts have pleaded for contract-based damages from the alleged breach of the implied warranty of merchantability while alleging a tort-based products liability defect. This mixing of liability and damage theories does not establish an injury. *See Rivera*, 283 F.3d at 320 (holding recasting products liability claim in language of contract law does not create an injury). Consequently, we hold that the Everetts have not pleaded facts demonstrating the type of injury that is redressable within the context of their breach of the implied warranty of merchantability claim. *Accord Novak*, 52 S.W.3d at 710 (holding that in order to demonstrate standing, "[a] named plaintiff in a class action must show that the threat of injury ... is 'real and immediate,' not 'conjectural' or 'hypothetical.' ") (quoting *Sosna v. Iowa*, 419 U.S. 393, 402–03, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975)); *see also Ford Motor Co. v. Rice*, 726 So.2d 626, 630 (Ala.1998) (holding "injury" very similar to the Everetts' alleged injury would not support a claim of fraudulent suppression).

The Everetts urge us to apply the analysis articulated by the Corpus Christi Court of Appeals in *Inman* and to hold that they

have alleged an injury sufficient to establish standing. *See* 121 S.W.3d at 881–85. We decline to follow *Inman* for two main reasons. First, the *Inman* analysis that the Everetts urge us to adopt is set forth in that opinion's discussion of whether the Inmans possess common law standing to assert negligence and misrepresentation causes of action. This standing analysis is not applicable here because the Everetts did not plead those common law causes of action. The direct, particularized, economic loss that *Inman* held to be an injury in fact for purposes of common law standing has no bearing on our statutory standing analysis concerning breach of the implied warranty of merchantability under the Uniform Commercial Code. Second, the Corpus Christi Court of Appeals backed into its standing analysis concerning the Inmans' breach of the implied warranty of merchantability claim by explaining that to hold no standing existed—because no actual malfunction of the seat belt restraint system had occurred—would add a new element to the Uniform Commercial Code statutory standing requirements, an actual malfunction. *Id.* at 882–83. Consequently, the Corpus Christi court reasoned that standing must exist because to hold that it did not exist would create a new element of standing purportedly not supported by the statute. *Id.*

We confront the standing issue directly and look to the statutory language governing a breach of the implied warranty of merchantability claim. *See Scott,* 405 S.W.2d at 56. The statute implicitly defines a buyer's injury as the product's defect, that is, the condition of the product or good that renders it unfit for the ordinary purposes for which it is used because of a lack of something necessary for adequacy. *See* TEX. BUS. & COM.CODE ANN. § 2.314 & cmt. 13; *Brewer,* 966 S.W.2d at 57; *Microsoft Corp.,* 914 S.W.2d at 608–09. An actual malfunction of the product or good is not required to establish an injury; what is required is an allegation that the alleged defect will inevitably manifest itself in the ordinary use of the product and that the defect renders the product unfit for the ordinary purposes for which the product is used. *See Microsoft Corp.,* 914 S.W.2d at 608–09. Such an allegation would make the plaintiff's injury personal and nonspeculative, establishing the plaintiff's statutory standing to assert a claim for breach of the implied warranty of merchantability. *Accord Scott,* 405 S.W.2d at 56 (recognizing plaintiff must plead injury or wrong as required by statute to establish statutory standing). Here, as discussed above, the Everetts have pleaded only an unmanifested defect. They have not pleaded or established that the alleged defective design of the TK–52 buckles will inevitably cause the buckle to malfunction; they have pleaded that the buckles have a *propensity* to partially latch and to *potentially* provide insufficient restraint during a crash. Because the buckles' alleged propensity to partially latch and their potential to ineffectively restrain have not occurred—despite over a decade of ordinary use of the TK–52 buckles—we cannot agree that the Everetts have pleaded the existence of a defect that renders their seat belt buckles unfit for the ordinary purposes for which they were intended. The TK–52 buckles in the Everetts' vehicles, by performing as they were supposed to for over ten years have lived up to that "minimum level of quality" implied by section 2.314(b)(c). *See* TEX. BUS. & COM.CODE ANN. § 2.314. For the reasons stated, we decline to follow the contrary analysis and holding in *Inman.* We hold that the Everetts do not possess statutory standing to assert a claim for breach of the implied warranty of merchantability.

**B. Fraudulent Concealment**

▮▮▮ The Everetts pleaded fraudulent concealment. Fraudulent concealment is an equitable doctrine that provides a defense to the bar of limitations, and limitations are not at issue here in the trial. *See Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex.App.-Fort Worth 1997, pet. denied); *Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 890 (Tex.App.-Austin 1997, pet. denied). The Everetts no doubt pleaded fraudulent concealment in anticipation of a limitations pleading by Appellees, but because the trial court granted Appellees' motion to dismiss for lack of standing, the limitations issue never ripened. In any event, the Everetts' fraudulent concealment affirmative defense pleading does not allege or establish any injury in fact to them.[11]

## C. DTPA

▮▮ We apply the statutory standing analysis to determine whether the Everetts have pleaded facts establishing their standing to assert a DTPA claim. The DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." *See* TEX. BUS. & COM.CODE ANN. §§ 17.46(b)(5), (7), (13), (22), (24) (Vernon 2002 & Supp.2004–05), 17.50(a)(1) (Vernon 2002). To recover under the DTPA, the plaintiff must show that (1) he is a consumer, (2) the defendant engaged in a false, misleading, or deceptive act, and (3) the act constituted a producing cause of economic damages or damages for mental anguish. *See id.* § 17.50(a)(1); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). Foreseeability is not an element of producing cause under the DTPA. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex.1997). However, if damages are too remote, too uncertain, or purely conjectural, they cannot be recovered. *Id.* "Economic damages" are defined as "compensatory damages for pecuniary loss, including costs of repair and replacement." TEX. BUS. & COM.CODE ANN. §§ 17.45(11) (Vernon 2002), 17.50(b)(1). Thus, by statute, an "injury" for purposes of standing to bring a DTPA suit occurs when deceptive acts are a producing cause of economic damages (or mental anguish damages) to a consumer. *See id.* § 17.50(a).

The Everetts pleaded that they are "consumers" as defined in the DTPA. They pleaded that Appellees made various false representations concerning the TK–52 buckles directly to them and to all class members and that they and all class members relied upon these representations to their detriment. *See id.* §§ 17.46(b)(5), (7), (13), (22), (24), 17.50(a)(1). The Everetts pleaded that the alleged deceptive acts "were a producing cause of economic damages and injury to Plaintiffs and other Class members." *See id.* § 17.50(a). Specifically, Pete and Marcella each alleged that they "did not receive the benefit of the bargain because the seat belts" in his

---

11. Even if we were to construe the Everetts' fraudulent concealment allegations as somehow pleading a cause of action for fraud, the unmanifested product defect they have pleaded is not redressable via a fraud claim. *See Tietsworth v. Harley–Davidson, Inc.*, 270 Wis.2d 146, 677 N.W.2d 233, 240 (2004). The Wisconsin Supreme Court in *Tietsworth* explained,

> [A]n allegation that a product is diminished in value because of an event or circumstance that might—or might not—occur in the future is inherently conjectural and does not allege actual benefit-of-the-bargain damages with the "reasonable certainty" required to state a fraud claim.

*Id.; see also Novak*, 52 S.W.3d at 707 (recognizing Texas common law fraud claim requires actual injury); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex.1977) (same).

pickup and in her Rodeo, respectively, "are defective."

██ The DTPA allows a plaintiff to recover for misrepresentation under the higher of the two common law measures of economic damages: either the "out-of-pocket" measure or the "benefit-of-the-bargain" measure. *See Arthur Andersen & Co.*, 945 S.W.2d at 817. The out-of-pocket measure compensates for the difference between what the consumer paid and what he received; the benefit-of-the-bargain measure compensates for the difference between what a consumer was promised and what he received. *Id.*

██ In a case with facts similar to the present facts, a group of plaintiffs sued a drug manufacturer for breach of the implied warranty of merchantability, for unjust enrichment, and for deceptive trade violations. *Rivera*, 283 F.3d at 317. The plaintiffs alleged that Wyeth sold a defective drug—it could cause liver damage if used for longer than the recommended ten days—but the plaintiffs did not claim that they suffered any injuries or liver damage or contend that the drug was defective as to them. *Id.* at 320. The Fifth Circuit held that the plaintiffs had not alleged an injury in fact; thus, they did not have standing. *Id.* at 320–21. Although the Fifth Circuit in *Rivera* did not apply a distinct statutory standing analysis to the plaintiffs' DTPA claims, the court implicitly concluded that the plaintiffs had not pleaded facts demonstrating the type of injury that is compensable under the DTPA. *See id.*

██ The Everetts' pleading, like the plaintiffs' pleading in *Rivera*, does not plead facts demonstrating the type of injury that is compensable under the DTPA.[12] So far, according to the Everetts' pleadings, they have received the benefit of their bargain; they were promised and they received seat belt buckles that latched and provided sufficient restraint. Although the Everetts generally pleaded that the TK–52 buckles "are defective," they have not identified in their pleading any way in which the TK–52 buckles in their vehicles performed differently from the way Appellees represented the buckles would perform. They have not pleaded characteristics or benefits that the seat belts were represented to have but did not have. In other words, although allegedly defective, the TK–52 buckles in the Everetts' vehicles have apparently functioned as represented for the past decade. Likewise, although the Everetts pleaded that it would cost $500 per vehicle to replace the TK–52 buckles, they have not pleaded facts demonstrating a failure that necessitates replacement and, indeed, they have not replaced the buckles in their vehicles. At some point, potential loss-of-benefit-of-the-bargain injuries and potential cost-of-repair or replacement injuries from a defect that has not manifested itself simply become too remote in time to constitute an "injury" for statutory standing purposes under the DTPA. *Accord Polaris*, 119 S.W.3d at 341;[13] *see also Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 362 (Tex. App.-Houston [14th Dist.] 2003, no pet.)

---

12. And, the hearing on Appellees' motions to dismiss was a nonevidentiary hearing, so we are not able to look to evidence to fill in these factual gaps.

13. The *Polaris* court explained,
Tires and cars have a distinctly limited usable life. At the end of the product's life, the product and whatever defect it may have had pass away. If a defect does not manifest itself in that time span, the buyer has gotten what he bargained for.
*Id.* (quoting *Compaq Computer Corp. v. La-Pray*, 79 S.W.3d 779, 792 (Tex.App.-Beaumont 2002), *rev'd on other grounds*, 135 S.W.3d 657 (Tex.2004)).

(noting that claim for benefit-of-the-bargain damages based on unmanifested defects "looks suspiciously like a claim for fear of future injury to property, which Texas has rejected"). Thus, because the Everetts have not pleaded facts that would satisfy the language of the statute requiring an allegation of an economic injury, the Everetts do not have statutory standing to assert a DTPA claim.[14]

We are aware that Florida has recognized a plaintiff's standing to bring suit for an unmanifested defect under that state's equivalent of the DTPA.[15] *See Collins*, 894 So.2d at 989–90 (recognizing standing to sue for diminished value of vehicle under Florida equivalent of DTPA). The *Collins* court summed up the issue it faced stating, "This case turns on a relatively simple question, at least as to damages—Is a car with defective seatbelt buckles worth less than a car with operational seatbelt buckles?" *Id.* at 991. Here, however, the Everetts make no allegations in their pleadings that the TK–52 buckles in their vehicles are not operational. Thus, we decline to follow the analysis of the *Collins* court.

**D. Constructive Trust**

▮▮▮ A constructive trust is an equitable remedy used to prevent unjust enrichment. *Medford v. Medford*, 68 S.W.3d 242, 248 (Tex.App.-Fort Worth 2002, no pet.); *Teve Holdings, Ltd. v. Jackson*, 763 S.W.2d 905, 908 (Tex.App.-Houston [1st

Dist.] 1988, no writ). To establish that a constructive trust exists, the proponent must prove (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Mowbray v. Avery*, 76 S.W.3d 663, 681 n. 27 (Tex.App.-Corpus Christi 2002, pet. denied). The proponent of a constructive trust must strictly prove the elements necessary for the imposition of the trust. *See, e.g., Ginther v. Taub*, 675 S.W.2d 724, 725 (Tex.1984) (requiring strict proof of unfair conduct or unjust enrichment on the part of the wrongdoer). Whether a constructive trust should be imposed must be determined by a court based on the equity of the circumstances. *Burrow v. Arce*, 997 S.W.2d 229, 245 (Tex.1999). Its scope and application, within some limitations, is generally left to the discretion of the court imposing it. *Wheeler v. Blacklands Prod. Credit Ass'n*, 627 S.W.2d 846, 849 (Tex. App.-Fort Worth 1982, no writ).

▮▮▮ We apply common law standing requirements to determine whether the Everetts possess standing to sue for imposition of a constructive trust. We are concerned only with whether the Everetts pleaded an injury that could be redressable though an equitable action for a constructive trust. Some of the types of situations in which a constructive trust is appropriate are outlined in *Fitz–Gerald v. Hull*, 150 Tex. 39, 41–42, 237 S.W.2d 256, 262–63 (1951), *Hubbard v. Shankle*, 138

---

14. We do not hold that a consumer may never possess standing to bring suit under the DTPA for benefit-of-the-bargain damages based on an unmanifested product defect. We simply hold that, taking the Everetts' pleadings as true, they have not pleaded facts demonstrating a statutory injury under the DTPA; they have not pleaded facts establishing the existence of economic damages, that is loss-of-benefit-of-the-bargain damages or cost-of-replacement damages.

15. The Everetts provided us a copy of a California case holding that a plaintiff possesses standing to bring suit for an unmanifested defect in an action under that state's equivalent of the DTPA, but we do not discuss it because it is an unpublished case and, consequently, in California it is of no precedential value and may not be cited. *Zavala v. TK Holdings, Inc.*, No. B168634, 2004 WL 2903981 (Cal.App. 2 Dist. Dec.16, 2004) (not certified for publication).

S.W.3d 474, 485 (Tex.App.-Fort Worth 2004, pet. denied), and *Parks v. Dumas,* 321 S.W.2d 653, 655 (Tex.Civ.App.-Fort Worth 1959, no writ). *See also In re Marriage of Braddock,* 64 S.W.3d 581, 586 (Tex.App.-Texarkana 2001, no pet.). The injuries pleaded by the Everetts, a defectively designed seat belt buckle that has the propensity to partially latch and the potential to provide inadequate restraint, thereby causing them loss of benefit-of-the-bargain and prospective cost-of-repair damages, are not the type of equitable injuries that are redressable in an equitable action for a constructive trust. *See, e.g., Medford,* 68 S.W.3d at 249 (explaining that the purpose of a constructive trust "is to right wrongs that cannot be addressed under other legal theories"). Nor is the conduct the Everetts attribute to Appellees the type of unfair conduct that will support an action for a constructive trust. We hold that the trial court did not err by dismissing the Everetts' claim for imposition of a constructive trust for lack of standing.

### E. Money Had and Received

Money had and received is an equitable action that may be maintained to prevent unjust enrichment when one person obtains money, which in equity and good conscience belongs to another. *J.C. Penney Co., Inc. v. Pitts,* 139 S.W.3d 455, 462 n. 4 (Tex.App.-Corpus Christi 2004, no pet.) (citing *Staats v. Miller,* 150 Tex. 581, 584, 243 S.W.2d 686, 687 (1951)). A cause of action for money had and received is not based on wrongdoing, but, instead, "looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." *Amoco Prod. Co. v. Smith,* 946 S.W.2d 162, 164 (Tex.App.-El Paso 1997, no writ). In short, it is an equitable doctrine applied to prevent unjust enrichment. *Hunt v. Baldwin,* 68 S.W.3d 117, 132 (Tex.App.-Hous-

ton [14th Dist.] 2001, no pet.); *Phippen v. Deere & Co.,* 965 S.W.2d 713, 725 (Tex. App.-Texarkana 1998, no pet.). We apply common law standing principles to this pleaded theory. The Everetts' pleading offers no explanation of how Appellees purportedly possess money that belongs to the Everetts; they do not plead that they purchased their vehicles from any of the Appellees and they do not allege that Appellees overcharged them for their vehicles. The Everetts plead only that their vehicles are worth less because they are fitted with TK–52 buckles and that, if they have the buckles replaced, they will incur out-of-pocket expenses. Prospective loss-of-benefit-of-the-bargain damages and cost-of-replacement damages do not constitute injuries that are recoverable in an equitable claim for money had and received. *Accord, e.g., Hunt,* 68 S.W.3d at 132 ("Hunt cannot show that the Baldwins are holding any money, which in either equity or good conscience belongs to her"). The Everetts have not pleaded that Appellees are holding money or property that, in equity or good conscience belongs to them. Consequently, they have not pleaded an injury demonstrating their standing to assert this equitable claim. *See Brown,* 53 S.W.3d at 305. We hold that the trial court did not err by dismissing the Everetts' claim for money had and received for lack of standing.

### F. Exemplary Damages

The Everetts' pleadings for exemplary damages add nothing to our standing analysis. An exemplary damages claim will not stand alone; it depends on some pleaded liability claim. *See, e.g.,* Tex. Civ. Prac. & Rem.Code Ann. § 41.004(a) (Vernon Supp.2004–05); *see also Fed. Express Corp. v. Dutschmann,* 846 S.W.2d 282, 284 (Tex.1993) (holding "[r]ecovery of punitive damages requires a finding of an independent tort with accompanying actual damages"). Because we hold that the Everetts

lack standing to assert all of their pleaded claims, we likewise affirm the trial court's dismissal of their exemplary damages claim.

Taking as true the facts set forth in the Everetts' second amended original petition, we hold that they have not pleaded any facts establishing an injury that is redressable through their breach of the implied warranty of merchantability, fraudulent concealment, DTPA, constructive trust, money had and received, and exemplary damages claims. Consequently, we hold that the trial court did not err by holding—following a nonevidentiary hearing on Appellees' motions to dismiss—that the Everetts lack standing to assert these claims. We overrule the Everetts' sole issue.

## IX. CONCLUSION

Having overruled the Everetts' sole issue, we affirm the trial court's order dismissing this case for lack of subject matter jurisdiction.