COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-04-181-CV

 

 

PETE EVERETT AND MARCELLA                                          APPELLANTS

EVERETT, INDIVIDUALLY AND
ON 

BEHALF OF OTHERS
SIMILIARLY 

SITUATED

 

                                                   V.

 

TK-TAITO, L.L.C., TAKATA SEAT                                           APPELLEES

BELTS, INC., AMERICAN
ISUZU 

MOTORS, INC., ISUZU
MOTORS OF 

AMERICA, INC., AND NISSAN
NORTH 

AMERICA, INC.

 

                                              ------------

 

             FROM THE 30TH
DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction













The sole issue we address in this appeal is
whether Appellants Pete and Marcella Everett alleged an injury sufficient to
establish their standing to assert certain causes of action on their own behalf
and on behalf of A[a]ll persons who own a vehicle
equipped with TK-52 Buckles . . . that is registered in Texas, except those
persons who have made claims against any defendant for personal injury damages
allegedly arising out of seatbelt malfunction@ or
whether, as asserted by the defendant Appellees,[1]
the Everetts lack standing individually and as class representatives because
they have suffered no injury that is redressable through their pleaded
claims.  The trial court granted
Appellees= motions to dismiss the
statewide class action lawsuit after determining that the Everetts lacked
standing because they had not alleged an injury in fact.  Because no allegations exist that the TK-52
seat belt buckles in Marcella=s 1991
Isuzu Rodeo or in Pete=s 1994 Nissan pickup have
malfunctioned, because Pete does not seek to recover personal injury damages
that he allegedly suffered from a TK-52 seat belt, and because neither Marcella
nor Pete has alleged an economic injury that is redressable through their
pleaded claims, we hold that the trial court did not err by dismissing the
Everetts= claims
for lack of standing.  Consequently, we
will affirm the trial court=s
judgment.

II.  Factual and Procedural Background

The Everetts sued the defendants based on the
production and sale of defective TK-52 buckles, ultimately alleging causes of
action for breach of warranty, fraudulent concealment, violations of the Texas
Deceptive Trade Practices Act (ADTPA@),
constructive trust, money had and received, and exemplary damages.  The Everetts pleaded that their vehicles, a
1994 Nissan pickup owned by Pete and a 1991 Isuzu Rodeo owned by Marcella, came
factory-equipped with TK-52 buckles.[2]  Although Pete alleges that he was physically
injured by a defective Takata seat belt buckle,[3]
he specifically does not seek damages in this suit for those physical
injuries.  According to the pleadings,
Marcella=s seat
belt buckles have not failed or caused her physical injury.








The Everetts alleged that Takata supplies the
TK-52 buckles to its manufacturer customers and that Takata knew as early as
the pre-production phase of the TK-52 buckles that the bucklesCby
virtue of a defective designCwere
susceptible to partial engagement, leaving the seat belt user essentially
unrestrained.  The Everetts pleaded that
after a Honda Accord crash test documented the TK-52's partial engagement
problem, Takata admitted a design defect existed and represented that it had
developed a corrective countermeasure that would be incorporated into future
TK-52 buckles.  Several recalls issued concerning
the defective buckles, but the Everetts maintain that not all of the defective
buckles were recalled and that a substantial number of the buckles with
identical defective internal design remain in use today, presenting an
unreasonable risk of harm to users by virtue of the buckles=
propensity to partially engage.  The
Everetts, on their own behalf and as class representatives, alleged economic
injury damages, arguing that purchasers of vehicles fitted with the TK-52
buckles did not receive the benefit of the bargain that they made in the
purchase of their vehicles and will suffer $500 per vehicle cost-of-replacement
damages.  








The defendants filed answers and numerous
motions, including motions to dismiss for want of jurisdiction.  Following a nonevidentiary hearing, the trial
court dismissed the Everetts= claims,
stating that the Everetts Alack
standing to pursue this action because they have not alleged that they have an >injury
in fact.=@[4]  The Everetts appeal from this dismissal
judgment.

III.  Standard of Review








Subject matter jurisdiction is essential to the
authority of a court to decide a case.  Tex.
Ass=n of Bus. v. Tex. Air Control
Bd., 852 S.W.2d 440, 443 (Tex. 1993). 
Standing is implicit in the concept of subject matter jurisdiction.  Id. 
Whether a party has standing to maintain a suit is a question of
law.  Tex. Natural Res. Conservation
Comm'n v. IT‑Davy, 74 S.W.3d 849, 855 (Tex. 2002); In re A.J.L.,
108 S.W.3d 414, 419 (Tex. App.CFort
Worth 2003, pet. denied).  To have
standing, the pleader bears the burden of alleging facts that affirmatively
demonstrate the court's jurisdiction to hear the cause.  Tex. Ass'n of Bus., 852 S.W.2d at
446.  However, the pleader need not
preview their case on the merits simply to establish jurisdiction. See Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554‑55 (Tex. 2000).  In reviewing a standing ruling, an appellate
court construes the petition in favor of the pleader.  Id.; Tex. Ass'n of Bus., 852
S.W.2d at 446.

IV.  Common law Standing and Statutory Standing








Standing to sue may be predicated upon either
statutory or common law authority.  See,
e.g., Williams v. Lara, 52 S.W.3d 171, 178‑79 (Tex. 2001); Inman,
121 S.W.3d at 869.  The common law
standing rules apply except where standing is statutorily conferred.  Hunt v. Bass, 664 S.W.2d 323, 324
(Tex. 1984); see also Williams, 52 S.W.3d at 178; In re Sullivan,
157 S.W.3d 911, 915-16 (Tex. App.CHouston
[14th Dist.] 2005, orig. proceeding) (discussing separate Astatutory
standing criteria@).  To establish common law standing, a plaintiff
must show Aa distinct injury to the
plaintiff and >a real controversy between the
parties, which . . . will be actually determined by the judicial declaration
sought.=@  Brown v. Todd, 53 S.W.3d 297, 305
(Tex. 2001).  In conferring statutory
standing, however, the legislature may by statute exempt litigants from proof
of the "special injury" 
required to establish common law standing.  See, e.g., Tex. Ass=n of
Bus., 852 S.W.2d at 472 (Dogget, J. Concurring and dissenting) (providing
examplesCincluding
the Texas Declaratory Judgments ActCof
statutory standing granted in the absence of a personal damage, i.e., an injury
in fact).  When standing has been
statutorily conferred, the statute itself serves as the proper framework for a
standing analysis.  Inman, 121
S.W.3d at 869.  The plaintiff must allege
and show how he has been injured or wronged within the parameters of the language
used in the statute.  Scott v. Bd. of
Adjustment, 405 S.W.2d 55, 56 (Tex. 1966).

V.  The Parties=
Positions  








The Everetts argue that they alleged an injury in
factCan
economic injuryCby pleading that their TK-52
buckles are defective, are not effective restraints, pose serious safety risks,
and have caused them concrete economic damages in the form of loss of the
benefit of their bargain in purchasing their vehicles and the prospective cost
of replacing the defective buckles.  The
defendants claim that the trial court correctly determined that the Everetts
lacked standing because the Everetts have suffered no injury in fact.  In addition, the Takata defendants argue that
the Everetts lack standing because their suit is a de facto Federal Safety Act
enforcement action.[5]  Isuzu separately argues that the Everetts
have failed to allege any failure in any Isuzu product because the seat belts
in Marcella=s Isuzu Rodeo have not
manifested any defect; thus, the Everetts do not have standing to pursue any
cause of action against Isuzu.

VI.  The Everetts Pleaded an Unmanifested Defect

The Everetts= live
pleading, their second amended original petition,  seeks recovery of economic damagesCloss of
benefit of the bargain and cost of replacement damagesCfor the Adefective@ seat
belt buckles installed in their vehicles. 
They pleaded that the TK-52 buckles Aall have
the same manufacturing defect,@ which
is Ainherent
in the design of the buckle, in that it may only partially engage under
ordinary usage conditions@ and Amay release
during a collision.@[6]  They further alleged that deviation from
manufacturing specifications Aincreases
the propensity for TK-52 Buckles to engage only partially.@  According to the Everetts, consumers
complained to the National Highway Traffic Safety Administration about the Ainherently
defective design of the TK-52 Buckles and its propensity to partially
engage in actual use,@ but the defendants
mischaracterized these complaints as related to chipped ABS plastic release
buttons.  Takata allegedly has known that
under a variety of actual use conditions Apartial
engagement can occur.@ 








The Everetts do not plead that the TK-52 buckles
in their vehicles have ever partially engaged when they attempted to latch them
nor do they plead that the buckles have provided them with insufficient
restraint or have come unlatched while they were driving.  They likewise do not plead that in an
accident or under stress the buckles will inevitably fail.  Thus, they have pleaded that an unmanifested
defectCa
propensity to partially latch and to thereby provide insufficient restraintCexists
within the TK-52 buckles in their vehicles. 
Accord Gen. Motors Corp. v. Garza, No. 04-03-00702-CV,
2005 WL 1812581, at *3-4 (Tex. App.CSan
Antonio Aug. 3, 2005, no pet.) (indicating, in appeal from class certification
order, that alleged defect in brake system that manifested and caused brakes to
pulsate in some, but not all, vehicles was unmanifested defect until it
occurred).

VII.  Current
Law Regarding Whether Economic Harm From

an
Unmanifested Product Defect is an AInjury@
Conferring Standing

 








We begin our analysis by drawing a distinction
between manifested product defects and unmanifested product defectsClike the
one alleged by the EverettsCbecause
most of the cases relied upon by the Everetts involve manifested defects, not
unmanifested defects; therefore, those cases are not controlling.  See McManus v. Fleetwood Enters.,
Inc., 320 F.3d 545, 547 (5th Cir. 2003) (involving manifested defectCmotor
homes required supplemental brakes to safely tow 3,500 pounds); Coghlan v.
Wellcraft Marine Corp., 240 F.3d 449, 451 (5th Cir. 2001) (involving
manifested defectCboat was constructed of wood and
fiberglass but was represented to be all fiberglass); Nobility Homes of
Tex., Inc. v. Shivers, 557 S.W.2d 77, 78 (Tex. 1977) (involving manifested
defectCdefectively
constructed mobile home); Nissan Motor Co. v. Fry, 27 S.W.3d 573, 579
(Tex. App.CCorpus Christi 2000, pet.
denied) (op. on reh=g) (involving manifested defectCseat
belt system was defective because it lacked adequate warnings that separate
manual lap belt must be used to avoid injury in accident); Hi-Lo Auto
Supply, L.P. v. Beresky, 986 S.W.2d 382, 386 (Tex. App.CBeaumont
1999, orig. proceeding) (involving manifested defectCold or
used batteries were being sold as new for full price); Microsoft Corp. v.
Manning, 914 S.W.2d 602, 606, 609 (Tex. App.CTexarkana
1995, writ dism=d) (involving manifested defectCsoftware
defect in data compression feature required purchase of an upgrade in order to
make feature function properly), abrogated on other grounds by Spector v.
Norwegian Cruise Line Ltd., 2004 WL 637894 (Tex. App.CHouston
[1st Dist.] Mar. 30, 2004, no pet.) and Vanderbilt Mortg. & Fin., Inc.
V. Posey, 146 S.W.3d 302 (Tex. App.CTexarkana
Sept. 9, 2004, no pet.).













The Texas Supreme Court has not yet addressed
which claims, if any, a plaintiff possesses standing to assert based on an unmanifested
product defect that causes only economic damages.  See Compaq Computer Corp. v. Lapray,
135 S.W.3d 657, 679, 681 n.15 (Tex. 2004) (recognizing that the law in Texas is
unclear regarding whether to permit claims for unmanifested defects).  Our sister courts, as well as out-of-state
courts, have reached different conclusions concerning which, if any, theories
of recovery are available to a plaintiff seeking economic
benefit-of-the-bargain or cost-of-replacement damages based on an unmanifested
product defect.  See, e.g., Inman,
121 S.W.3d at 881, 885 (holding plaintiffs possessed standing to assert claims
for negligence, negligent misrepresentation, DTPA violations, breach of the
implied warranty of merchantability, and breach of the implied warranty of
fitness for a particular purpose seeking economic damages based on unmanifested
defect);[7]
Polaris Indus., Inc. v. McDonald, 119 S.W.3d 331, 338 (Tex. App.CTyler
2003, no pet.) (holding plaintiff lacked standing to assert claims for breach
of implied warranty of merchantability and for violation of Magnuson Moss Act
when alleged design defect had not caused an injury); Wallis v. Ford Motor
Co., No. 04-506, 2005 WL 1120218 (Ark. May 12, 2005) (holding plaintiff
lacked standing to assert claims for common law fraud and for violation of the
Arkansas equivalent of the DTPA for an unmanifested design defect); Collins
v. DaimlerChrysler Corp., 894 So.2d 988, 990 (Fla. Dist. Ct. App. 2005)
(holding plaintiff possessed standing to assert statutory claim under Florida
equivalent of the DTPA for alleged economic damages based on unmanifested seat
belt defect).  The determination of
whether a plaintiff possesses standing to assert a particular claim depends on
the facts pleaded and the cause of action asserted.  See, e.g., M.D. Anderson Cancer Ctr. v.
Novak, 52 S.W.3d 704, 707-08 (Tex. 2001) (analyzing standing in the context
of asserted mail fraud claim); Inman, 121 S.W.3d at 871, 881 (analyzing
standing in the context of each claim asserted); Coghlan, 240 F.3d at
453 (holding, A[o]ur task is to evaluate each
of the Coghlans= state law claims for the
availability of benefit of the bargain relief@).  Consequently, we now examine in turn the
causes of action pleaded by the Everetts. 
We apply either common law standing rules or statutory standing rules,
as applicable, to determine whether the Everetts=
allegations of economic harm through loss of the benefit of their bargain in
purchasing their vehicles and the prospective cost of replacing the defective
buckles constitute allegations of injuries that are redressable through any of
their pleaded liability theories.

VIII.  Application of the Law to the Everetts=
Pleadings

A.     Breach of Implied Warranty of
Merchantability













The Everetts= second
amended original petition purports to plead a cause of action against Appellees
for breach of the implied warranty of merchantability.[8]  See Tex.
Bus. & Com. Code Ann. ' 2.314
(Vernon 1994).  Because this is a
statutory cause of action, we apply statutory standing principles.  The statutory elements of the Everetts= breach
of implied warranty of merchantability are (1) that their vehicles= seat
belt buckles are defective as unfit for their purpose because of a lack of what
was required for adequacy, (2) that the alleged defect existed when the buckles
left the manufacturer's and the seller's possession, and (3) that the alleged
defect proximately caused the injuries for which the Everetts seek
damages.  See id. '' 2.314
& cmt. 13, 2.607(c)(1), 2.714-.715; see also Roventini v. Ocular Scis.,
Inc., 111 S.W.3d 719, 723 (Tex. App.CHouston
[1st Dist.] 2003, no pet.) (citing Plas‑Tex, Inc. v. U.S. Steel Corp.,
772 S.W.2d 442, 444 (Tex. 1989)); Trobaugh Constr., Inc. v. Home Depot,
USA, Inc., No. 01‑02‑00340‑CV, 2003 WL 23000025, at *3 (Tex.
App.CHouston
[1st Dist.] Dec. 23, 2003, no pet.) (mem. op). 
So, to establish statutory standing to assert a breach of the implied
warranty of merchantability claim, the Everetts were required to plead that the
alleged defect in the TK-52 buckles proximately caused each of them
injury.  See Tex. Bus. & Com. Code Ann. ' 2.314
& cmt. 13 (AIn an action based on breach of
warranty, it is of course necessary to show . . . that the breach of the
warranty was the proximate cause of the loss sustained@).  We examine the Everetts=
pleadings to determine whether, construed liberally and taken as true, the
facts pleaded establish that the alleged defect in the TK-52 buckles
proximately caused them injury, thereby establishing their statutory standing
to bring suit for breach of the implied warranty of merchantability.








In determining whether the allegations show that
the defect caused injury, we recognize that the defect in an implied warranty
of merchantability case may not be the same as the defect in a strict products
liability case.  Plas-Tex, 772 S.W.2d
at 443-44.[9]  In the context of an implied warranty of
merchantability case, the word Adefect@ means a
condition of the goods that renders them unfit for the ordinary purposes for
which they are used because of a lack of something necessary for adequacy.  Id. at 444; Brewer, 966 S.W.2d
at 57; Garza, 2005 WL 1812581, at *3-4. 
In the area of strict products liability, however, the word Adefect@ means a
condition of the product that renders it unreasonably dangerous.  Plas‑Tex, 772 S.W.2d at
444.  A defective design may render a
product unreasonably dangerous for strict liability purposes, but may not
render a product unfit for the ordinary purposes for which it is used if the
product works properly when used for its ordinary purpose.  Accord Sears, Roebuck & Co. v. Kunze,
996 S.W.2d 416, 422 (Tex. App.CBeaumont
1999, pet. denied) (involving products liability suit based on unreasonably
dangerous radial sawCdefective for lack of a lower
blade guardCbut obviously fit for sawing,
the ordinary purpose for which it was used). 








The Everetts pleaded a breach of the implied
warranty of merchantability cause of action, but they pleaded a products
liability defectCa defective design of the buckle
giving it a Apropensity to
partially latch and potentially provide insufficient restraint during a
crash.@[10]
[Emphasis added.]  A product that
performs its ordinary function adequately is not defective in the implied warranty
of merchantability context simply because it does not function as well as the
buyer would like, or even as well as it could. 
Brewer, 966 S.W.2d at 57; Trobaugh Constr., Inc., 2003 WL
23000025, at *3.  That is, for a defect
to cause redressable damages in a breach of the implied warranty of
merchantability action, it must cause the product not to function adequately in
the performance of its ordinary function for the plaintiff.  Compare Microsoft Corp., 914 S.W.2d at
610 (holding software that could not successfully perform data
compressionCregardless of whether plaintiff
attempted to use this featureCdid not
or would not perform adequately in its ordinary function so that a Adefect@ existed
causing injury and loss of benefit-of-the-bargain damages) with Rivera
v. Wyeth-Ayerst Labs., 283 F.3d 315, 320 (5th Cir. 2002) (holding that when
drug could and did perform adequately in its ordinary function for
plaintiffs, plaintiffs= breach of the implied warranty
of merchantability claim seeking only benefit-of-the-bargain damages did not
plead an injury in fact); see also Polaris Indus., 119 S.W.3d at 340-41
(holding that when Ajet ski@ could
and did perform adequately in its ordinary function, plaintiffs= breach
of the implied warranty of merchantability claim seeking only
benefit-of-the-bargain damages did not plead an injury in fact); In re Air
Bag Prods. Liab. Litig., 7 F. Supp. 2d 792, 802-03 (E.D. La. 1998)
(recognizing claim for breach of implied warranty of merchantability requires
that the alleged defect has or would manifest itself during the product=s normal
use). 








Here, the Everetts=
vehicles are many years old; Pete=s Nissan
truck is a 1994 model and Marcella=s Isuzu
Rodeo is a 1991 model.  Although the
vehicles are over a decade old, the Everetts do not allege that the TK-52
buckles in their vehicles have ever only partially latched when they latched
them or have ever provided them with insufficient restraint. They instead seek
economic damages based on the Abuckles= propensity
to partially latch and potentially provide insufficient restraint during
a crash.@  [Emphasis added.]  To cause redressable injuries in the breach
of the implied warranty of merchantability context, a Adefect@ must
either have manifested during the product=s normal
use or such manifestation must be inevitable when the defective feature of the
product is usedCsuch as the software data
compression feature in Manning. 
914 S.W.2d at 610; see also In re Gen. Motors Corp. Prods. Liab.
Litig., 966 F. Supp. 1525, 1532-33 (E.D. Mo. 1997) (AThe
implied warranty of merchantability can only be breached when the >vehicle
manifests a defect that is so basic it renders the vehicle unfit for its
ordinary purpose of providing transportation.=@)
(quoting Am. Suzuki Motor Corp. v. Superior Court, 44 Cal. Rptr. 2d 526,
529‑30 (Cal. Dist Ct. App. 1995)). 
Although the Everetts=
vehicles are over a decade old, the defect that they allege has caused them
economic injuries has not manifested itself, nor do the Everetts claim that it
will inevitably manifest itself.








Instead, the Everetts have pleaded for contract-based
damages from the alleged breach of the implied warranty of merchantability
while alleging a tort-based products liability defect.  This mixing of liability and damage theories
does not establish an injury.  See
Rivera, 283 F.3d at 320 (holding recasting products liability claim in
language of contract law does not create an injury).  Consequently, we hold that the Everetts have
not pleaded facts demonstrating the type of injury that is redressable within
the context of their breach of the implied warranty of merchantability
claim.  Accord Novak, 52
S.W.3d at 710 (holding that in order to demonstrate standing, A[a]
named plaintiff in a class action must show that the threat of injury . . . is >real and
immediate,= not >conjectural= or >hypothetical.=@)
(quoting Sosna v. Iowa, 419 U.S. 393, 402-03, 95 S. Ct. 553, 559
(1975)); see also Ford Motor Co. v. Rice, 726 So.2d 626, 630 (Ala. 1998)
(holding Ainjury@ very
similar to the Everetts= alleged injury would not
support a claim of fraudulent suppression).








The Everetts urge us to apply the analysis
articulated by the Corpus Christi Court of Appeals in Inman and to hold
that they have alleged an injury sufficient to establish standing.  See 121 S.W.3d at 881-85.  We decline to follow Inman for two
main reasons.  First, the Inman
analysis that the Everetts urge us to adopt is set forth in that opinion=s
discussion of whether the Inmans possess common law standing to assert
negligence and misrepresentation causes of action.  This standing analysis is not applicable here
because the Everetts did not plead those common law causes of action.  The direct, particularized, economic loss
that Inman held to be an injury in fact for purposes of common law
standing has no bearing on our statutory standing analysis concerning breach of
the implied warranty of merchantability under the Uniform Commercial Code.  Second, the Corpus Christi Court of Appeals
backed into its standing analysis concerning the Inmans= breach
of the implied warranty of merchantability claim by explaining that to hold no
standing existedCbecause no actual malfunction of
the seat belt restraint system had occurredCwould
add a new element to the Uniform Commercial Code statutory standing
requirements, an actual malfunction.  Id.
at 882-83.  Consequently, the Corpus
Christi court reasoned that standing must exist because to hold that it did not
exist would create a new element of standing purportedly not supported by the
statute.  Id.













We confront the standing issue directly and look
to the statutory language governing a breach of the implied warranty of
merchantability claim.  See Scott, 405
S.W.2d at 56.  The statute implicitly
defines a buyer=s injury as the product=s
defect, that is, the condition of the product or good that renders it unfit for
the ordinary purposes for which it is used because of a lack of something
necessary for adequacy.  See Tex. Bus. & Com. Code Ann. ' 2.314
& cmt. 13; Brewer, 966 S.W.2d at 57;Microsoft Corp., 914
S.W.2d at 608-09. An actual malfunction of the product or good is not required
to establish an injury; what is required is an allegation that the alleged
defect will inevitably manifest itself in the ordinary use of the product and
that the defect renders the product unfit for the ordinary purposes for which
the product is used.  See Microsoft
Corp., 914 S.W.2d at 608-09. Such an allegation would make the plaintiff=s injury
personal and nonspeculative, establishing the plaintiff=s
statutory standing to assert a claim for breach of the implied warranty of
merchantability.  Accord Scott, 405
S.W.2d at 56 (recognizing plaintiff must plead injury or wrong as required by
statute to establish statutory standing).   Here,
as discussed above, the Everetts have pleaded only an unmanifested defect.  They have not pleaded or established that the
alleged defective design of the TK-52 buckles will inevitably cause the buckle
to malfunction; they have pleaded that the buckles have a  propensity to partially latch and to potentially
provide insufficient restraint during a crash. 
Because the buckles= alleged
propensity to partially latch and their potential to ineffectively restrain
have not occurredCdespite over a decade of
ordinary use of the TK-52 bucklesCwe
cannot agree that the Everetts have pleaded the existence of a defect that renders
their seat belt buckles unfit for the ordinary purposes for which they were
intended.  The TK-52 buckles in the
Everetts=
vehicles, by performing as they were supposed to for over ten years have lived
up to that Aminimum level of quality@ implied
by section 2.314(b)(c).  See Tex. Bus. & Com. Code Ann. '
2.314.  For the reasons stated, we
decline to follow the contrary analysis and holding in Inman.  We hold that the Everetts do not possess
statutory standing to assert a claim for breach of the implied warranty of
merchantability.

B. 
Fraudulent Concealment

The Everetts pleaded fraudulent concealment.  Fraudulent concealment is an equitable
doctrine that provides a defense to the bar of limitations, and limitations are
not at issue here in the trial.  See
Mitchell Energy Corp. v. Bartlett, 958 S.W.2d 430, 439 (Tex. App.CFort
Worth 1997, pet. denied); Santanna Natural Gas Corp. v. Hamon Operating Co.,
954 S.W.2d 885, 890 (Tex. App.CAustin
1997, pet. denied).  The Everetts no
doubt pleaded fraudulent concealment in anticipation of a limitations pleading
by Appellees, but because the trial court granted Appellees= motion
to dismiss for lack of standing, the limitations issue never ripened.  In any event, the Everetts=
fraudulent concealment affirmative defense pleading does not allege or
establish any injury in fact to them.[11]








C.  DTPA








We apply the statutory standing analysis to
determine whether the Everetts have pleaded facts establishing their standing
to assert a DTPA claim. The DTPA prohibits A[f]alse,
misleading, or deceptive acts or practices in the conduct of any trade or
commerce.@ 
See Tex. Bus. & Com.
Code Ann. '' 17.46(b)(5), (7), (13), (22),
(24) (Vernon 2002 & Supp. 2004-05), 17.50(a)(1) (Vernon 2002).  To recover under the DTPA, the plaintiff must
show that (1) he is a consumer, (2) the defendant engaged in a false, misleading,
or deceptive act, and (3) the act constituted a producing cause of economic
damages or damages for mental anguish.  See
id. '
17.50(a)(1); Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472,
478 (Tex. 1995).  Foreseeability is not
an element of producing cause under the DTPA. 
Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812,
816 (Tex. 1997).  However, if damages are
too remote, too uncertain, or purely conjectural, they cannot be
recovered.  Id.  AEconomic
damages@ are
defined as Acompensatory damages for
pecuniary loss, including costs of repair and replacement.@  Tex.
Bus. & Com. Code Ann. ''
17.45(11) (Vernon 2002), 17.50(b)(1). Thus, by statute, an Ainjury@ for
purposes of standing to bring a DTPA suit occurs when deceptive acts are a
producing cause of economic damages (or mental anguish damages) to a
consumer.  See id. '
17.50(a).

The Everetts pleaded that they are Aconsumers@ as
defined in the DTPA.  They pleaded that
Appellees made various false representations concerning the TK-52 buckles
directly to them and to all class members and that they and all class members
relied upon these representations to their detriment.  See id. ''
17.46(b)(5), (7), (13), (22), (24), 17.50(a)(1).  The Everetts pleaded that the alleged
deceptive acts Awere a producing cause of
economic damages and injury to Plaintiffs and other Class members.@  See id. '
17.50(a).  Specifically, Pete and
Marcella each alleged that they Adid not
receive the benefit of the bargain because the seat belts@ in his
pickup and in her Rodeo, respectively, Aare
defective.@

The DTPA allows a plaintiff to recover for
misrepresentation under the higher of the two common law measures of economic
damages:  either the
"out-of-pocket" measure or the "benefit-of-the-bargain"
measure.  See Arthur Andersen &
Co., 945 S.W.2d at 817.  The out‑of‑pocket
measure compensates for the difference between what the consumer paid and what
he received; the benefit-of-the-bargain measure compensates for the difference
between what a consumer was promised and what he received.  Id.








In a case with facts similar to the present
facts, a group of plaintiffs sued a drug manufacturer for breach of the implied
warranty of merchantability, for unjust enrichment, and for deceptive trade
violations.  Rivera, 283 F.3d at
317.  The plaintiffs alleged that Wyeth
sold a defective drugCit could cause liver damage if
used for longer than the recommended ten daysCbut the
plaintiffs did not claim that they suffered any injuries or liver damage or
contend that the drug was defective as to them. 
Id. at 320.  The Fifth
Circuit held that the plaintiffs had not alleged an injury in fact; thus, they
did not have standing.  Id. at
320-21.  Although the Fifth Circuit in Rivera
did not apply a distinct statutory standing analysis to the plaintiffs= DTPA
claims, the court implicitly concluded that the plaintiffs had not pleaded
facts demonstrating the type of injury that is compensable under the DTPA.  See id.   













The Everetts=
pleading, like the plaintiffs=
pleading in Rivera, does not plead facts demonstrating the type of
injury that is compensable under the DTPA.[12]  So far, according to the Everetts=
pleadings, they have received the benefit of their bargain; they were promised
and they received seat belt buckles that latched and provided sufficient
restraint.  Although the Everetts
generally pleaded that the TK-52 buckles Aare
defective,@ they have not identified in
their pleading any way in which the TK-52 buckles in their vehicles performed
differently from the way Appellees represented the buckles would perform.  They have not pleaded characteristics or
benefits that the seat belts were represented to have but did not have.  In other words, although allegedly defective,
the TK-52 buckles in the Everetts=
vehicles have apparently functioned as represented for the past decade.  Likewise, although the Everetts pleaded that
it would cost $500 per vehicle to replace the TK-52 buckles, they have not
pleaded facts demonstrating a failure that necessitates replacement and,
indeed, they have not replaced the buckles in their vehicles.  At some point, potential
loss-of-benefit-of-the-bargain injuries and potential cost-of-repair or
replacement injuries from a defect that has not manifested itself simply become
too remote in time to constitute an Ainjury@ for
statutory standing purposes under the DTPA. 
Accord Polaris, 119 S.W.3d at 341;[13]
see also Tracker Marine, L.P. v. Ogle, 108 S.W.3d 349, 362 (Tex. App.CHouston
[14th Dist.] 2003, no pet.) (noting that claim for benefit-of-the-bargain
damages based on unmanifested defects Alooks
suspiciously like a claim for fear of future injury to property, which Texas
has rejected@).  Thus, because the Everetts have not pleaded
facts that would satisfy the language of the statute requiring an allegation of
an economic injury, the Everetts do not have statutory standing to assert a
DTPA claim.[14]








We are aware that Florida has recognized a
plaintiff=s standing to bring suit for an
unmanifested defect under that state=s
equivalent of the DTPA.[15]  See Collins, 894 So.2d at 989-90
(recognizing standing to sue for diminished value of vehicle under Florida
equivalent of DTPA).  The Collins
court summed up the issue it faced stating, AThis
case turns on a relatively simple question, at least as to damagesCIs a car
with defective seatbelt buckles worth less than a car with operational seatbelt
buckles?@  Id. at 991.  Here, however, the Everetts make no
allegations in their pleadings that the TK-52 buckles in their vehicles are not
operational.  Thus, we decline to follow
the analysis of the Collins court.

D. 
Constructive Trust

A constructive trust is an equitable remedy used
to prevent unjust enrichment.  Medford
v. Medford, 68 S.W.3d 242, 248 (Tex. App.CFort
Worth 2002, no pet.); Teve Holdings, Ltd. v. Jackson, 763 S.W.2d 905,
908 (Tex. App.CHouston [1st Dist.] 1988, no
writ).  To establish that a constructive
trust exists, the proponent must prove (1) breach of a special trust, fiduciary
relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3)
tracing to an identifiable res.  Mowbray
v. Avery, 76 S.W.3d 663, 681 n.27 (Tex. App.CCorpus
Christi 2002, pet. denied).  The
proponent of a constructive trust must strictly prove the elements necessary
for the imposition of the trust.  See,
e.g., Ginther v. Taub, 675 S.W.2d 724, 725 (Tex. 1984) (requiring strict
proof of unfair conduct or unjust enrichment on the part of the
wrongdoer).  Whether a constructive trust
should be imposed must be determined by a court based on the equity of the
circumstances.  Burrow v. Arce,
997 S.W.2d 229, 245 (Tex. 1999).  Its
scope and application, within some limitations, is generally left to the
discretion of the court imposing it.  Wheeler
v. Blacklands Prod. Credit Ass'n, 627 S.W.2d 846, 849 (Tex. App.CFort
Worth 1982, no writ).  








We apply common law standing requirements to
determine whether the Everetts possess standing to sue for imposition of a
constructive trust.  We are concerned
only with whether the Everetts pleaded an injury that could be redressable
though an equitable action for a constructive trust.  Some of the types of situations in which a
constructive trust is appropriate are outlined in  Fitz‑Gerald v. Hull, 150 Tex.
39, 41-42, 237 S.W.2d 256, 262‑63 (1951), Hubbard v. Shankle, 138
S.W.3d 474, 485 (Tex. App.CFort
Worth 2004, pet. denied), and Parks v. Dumas, 321 S.W.2d 653, 655 (Tex.
Civ. App.CFort Worth 1959, no writ).  See also In re Marriage of Braddock, 64
S.W.3d 581, 586 (Tex. App.CTexarkana
2001, no pet.).  The injuries pleaded by
the Everetts, a defectively designed seat belt buckle that has the propensity
to partially latch and the potential to provide inadequate restraint, thereby
causing them loss of benefit-of-the-bargain and prospective cost-of-repair
damages, are not the type of equitable injuries that are redressable in an
equitable action for a constructive trust. 
See, e.g., Medford, 68 S.W.3d at 249 (explaining that the purpose
of a constructive trust Ais to right wrongs that cannot
be addressed under other legal theories@).  Nor is the conduct the Everetts attribute to
Appellees the type of unfair conduct that will support an action for a
constructive trust.  We hold that the
trial court did not err by dismissing the Everetts= claim
for imposition of a constructive trust for lack of standing.

 








E.  Money
Had and Received








Money had and received is an equitable action
that may be maintained to prevent unjust enrichment when one person obtains
money, which in equity and good conscience belongs to another.  J.C. Penney Co., Inc. v. Pitts, 139
S.W.3d 455, 462 n.4 (Tex. App.CCorpus
Christi 2004, no pet.) (citing Staats v. Miller, 150 Tex. 581, 584, 243
S.W.2d 686, 687 (1951)).  A cause of
action for money had and received is not based on wrongdoing, but, instead, Alooks
only to the justice of the case and inquires whether the defendant has received
money which rightfully belongs to another.@  Amoco Prod. Co. v. Smith, 946 S.W.2d
162, 164 (Tex. App.CEl Paso 1997, no writ).  In short, it is an equitable doctrine applied
to prevent unjust enrichment.  Hunt v.
Baldwin, 68 S.W.3d 117, 132 (Tex. App.CHouston
[14th Dist.] 2001, no pet.); Phippen v. Deere & Co., 965 S.W.2d 713,
725 (Tex. App.CTexarkana 1998, no pet.).   We apply common law standing principles to
this pleaded theory.  The Everetts=
pleading offers no explanation of how Appellees purportedly possess money that
belongs to the Everetts; they do not plead that they purchased their vehicles
from any of the Appellees and they do not allege that Appellees overcharged
them for their vehicles.  The Everetts
plead only that their vehicles are worth less because they are fitted with
TK-52 buckles and that, if they have the buckles replaced, they will incur out-of-pocket
expenses.  Prospective
loss-of-benefit-of-the-bargain damages and cost-of-replacement damages do not
constitute injuries that are recoverable in an equitable claim for money had
and received.  Accord, e.g.,
Hunt, 68 S.W.3d at 132 (AHunt
cannot show that the Baldwins are holding any money, which in either equity or
good conscience belongs to her@).  The Everetts have not pleaded that Appellees
are holding money or property that, in equity or good conscience belongs to
them. Consequently, they have not pleaded an injury demonstrating their
standing to assert this equitable claim. 
See Brown, 53 S.W.3d at 305. 
We hold that the trial court did not err by dismissing the Everetts= claim
for money had and received for lack of standing.

F. 
Exemplary Damages

The Everetts=
pleadings for exemplary damages add nothing to our standing analysis.  An exemplary damages claim will not stand
alone; it depends on some pleaded liability claim.  See, e.g., Tex. Civ. Prac. & Rem. Code Ann. '
41.004(a) (Vernon Supp. 2004-05); see also Fed. Express Corp. v. Dutschmann,
846 S.W.2d 282, 284 (Tex. 1993) (holding A[r]ecovery
of punitive damages requires a finding of an independent tort with accompanying
actual damages@).  Because we hold that the Everetts lack
standing to assert all of their pleaded claims, we likewise affirm the trial
court=s
dismissal of their exemplary damages claim.








Taking as true the facts set forth in the Everetts= second
amended original petition, we hold that they have not pleaded any facts
establishing an injury that is redressable through their breach of the implied
warranty of merchantability, fraudulent concealment, DTPA, constructive trust,
money had and received, and exemplary damages claims.  Consequently, we hold that the trial court
did not err by holdingCfollowing a nonevidentiary
hearing on Appellees= motions to dismissCthat the
Everetts lack standing to assert these claims. 
We overrule the Everetts= sole
issue.

IX.  Conclusion

Having overruled the Everetts= sole
issue, we affirm the trial court=s order
dismissing this case for lack of subject matter jurisdiction.

 

 

SUE
WALKER

JUSTICE

 

PANEL A:   CAYCE, C.J.; HOLMAN and WALKER, JJ.

 

DELIVERED: November 3, 2005











[1]The named defendants in
the underlying lawsuit are Takata Corp.; TK-Taito, L.L.C.; Takata Seat Belts,
Inc.; American Isuzu Motors, Inc.; Isuzu Motors of America, Inc.; and Nissan
North America, Inc.  The appellate brief
filed by TK-Taito, L.L.C. and Takata Seat Belts, Inc. (Athe Takata defendants@) indicates that Takata
Corp. Ahas not been served and
has not appeared in this action.@ The appellate brief filed by Isuzu Motors
America, Inc. states that it was improperly named as AIsuzu Motors of
America, Inc.,@ that American Isuzu
Motors Inc. no longer exists, and that Isuzu Motors America, Inc. is the
successor in interest to American Isuzu Motors Inc.  References herein to Athe defendants@ or to Athe Takata defendants@ refer only to those
entities that were actually served and that are still in existence.





[2]The pleadings do not
state when or where the Everetts purchased these automobiles or whether they
were new or used when they were purchased. 
Nor was this information disclosed at the nonevidentiary hearing on
Appellees= motions to dismiss.





[3]The pleadings do not indicate
whether Pete=s injury occurred from
the failure of the TK-52 buckle in his vehicle or whether he was a passenger in
a different vehicle when he received the injuries.  The pleadings state, APete Everett owns a 1994
Nissan Pickup, which came factory-equipped with TK-52 Buckles.  He was physically injured by a defective
Takata seat-belt, due to the Defect described herein.  He does not, however, seek damages for his
physical injury.@





[4]Before entering the
dismissal order, the trial court explained its ruling in a letter to the
parties and expressly rejected application of DaimlerChrysler Corp. v. Inman,
121 S.W.3d 862 (Tex. App.CCorpus Christi 2003, pet.
granted), the primary case relied upon by the Everetts in this appeal:

 

Although the Plaintiffs= [sic] put great stock in
the 13th Court of Appeals=[s] opinion in Inman, I find that Court=s analysis to be rather
one-sided.

 

The Court seems to go to
great lengths to stretch Inman=s claims of injury so that those claims become
injuries in fact, thereby giving Inman standing in that case.

 

I am neither willing nor
able to do that in the instant case. 
Clearly, an actual injuryCan injury in factCis required in order for
a Plaintiff to have standing to sue.  As
pointed out by Justice Jerry E. Smith, in Rivera v. Wyeth-Ayerst
Laboratories, [283 F.3d 315, 319 (5th Cir. 2002),]A[m]erely asking for money
does not establish an injury in fact.@

 





[5]Because we conclude that
the Everetts have not pleaded facts establishing an injury that is redressable
under the liability theories they have pleaded, we do not reach this
alternative ground for the trial court=s dismissal. 
See Tex. R. App. P.
47.1 (stating that appellate court need only address every issue raised and
necessary for final disposition of appeal).





[6]The emphasis in these
quotes from the Everetts= second amended original
petition is ours.





[7]The supreme court heard
argument in this case on January 6, 2005.





[8]The Everetts= reply brief, in places,
characterizes their pleading as asserting a breach of the implied warranty of
fitness for a particular purpose; but their second amended petition asserts
only breach of the implied warranty of merchantability.  Consequently, we do not analyze the Everetts= standing to assert a
claim for breach of the implied warranty of fitness for a particular purpose.





[9]The supreme court in Plas-Tex
expressly instructed, APractitionersCas well as the courtsCshould exercise care to
see that these terms [the different meanings of the term Adefect@ in breach of the implied
warranty of merchantability cases versus products liability cases] are used
precisely.@   Id. Subsequently, chapter 82 of the
civil practice and remedies code was enacted, and it purports to utilize the
term Adefect@ interchangeably when the
suit is Aagainst a manufacturer or
seller for recovery of damages arising out of personal injury, death, or
property damage allegedly caused by a defective product.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 82.001 (Vernon 2005); see also Hyundai Motor
Co. v. Rodriguez, 995 S.W.2d 661, 664-66 (Tex. 1999) (recognizing different
definitions of defect were Afunctionally equivalent@ in crashworthiness case
involving claim for personal injuries). 
Because this case does not involve claims for personal injury, death, or
property damage, we apply the Plas-Tex definition of defect applicable
to suits for breach of the implied warranty of merchantability.  See Gen. Motors Corp. v. Brewer,
966 S.W.2d 56, 57 (Tex. 1998) (applying Plas-Tex definition of defect to
suit for breach of implied warranty of merchantability). 





[10]The Everetts pleaded, in
part, ATakata has known that
under a variety of actual use conditions, that partial engagement can occur@ and ATakata has allowed
millions of TK-52 Buckles to be sold worldwide, all of which have an identical
internal design, and all of which suffer from the same unreasonable risk.@ [Emphasis added.]





[11]Even if we were to
construe the Everetts= fraudulent concealment
allegations as somehow pleading a cause of action for fraud, the unmanifested
product defect they have pleaded is not redressable via a fraud claim.  See Tietsworth v. Harley-Davidson,
Inc., 677 N.W.2d 233, 240 (Wis. 2004). 
The Wisconsin Supreme Court in Tietsworth explained, 

 

[A]n allegation that a
product is diminished in value because of an event or circumstance that mightCor might notCoccur in the future is
inherently conjectural and does not allege actual benefit-of-the-bargain
damages with the Areasonable certainty@ required to state a
fraud claim.

 

Id.; see also Novak,
52 S.W.3d at 707 (recognizing Texas common law fraud claim requires actual
injury); Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 185 (Tex.
1977) (same).





[12]And, the hearing on
Appellees= motions to dismiss was a
nonevidentiary hearing, so we are not able to look to evidence to fill in these
factual gaps.





[13]The Polaris court
explained, 

 

Tires and cars have a
distinctly limited usable life.  At the
end of the product=s life, the product and
whatever defect it may have had pass away. 
If a defect does not manifest itself in that time span, the buyer has
gotten what he bargained for.

 

Id.  (quoting Compaq
Computer Corp. v. Lapray, 79 S.W.3d 779, 792 (Tex. App.CBeaumont 2002), rev=d on other grounds, 135 S.W.3d 657 (Tex.
2004)).

 





[14]We do not hold that a
consumer may never possess standing to bring suit under the DTPA for
benefit-of-the-bargain damages based on an unmanifested product defect.  We simply hold that, taking the Everetts= pleadings as true, they
have not pleaded facts demonstrating a statutory injury under the DTPA; they
have not pleaded facts establishing the existence of economic damages, that is
loss-of-benefit-of-the-bargain damages or cost-of-replacement damages.





[15]The Everetts provided us
a copy of a California case holding that a plaintiff possesses standing to
bring suit for an unmanifested defect in an action under that state=s equivalent of the DTPA,
but we do not discuss it because it is an unpublished case and, consequently,
in California it is of no precedential value and may not be cited.  Zavala v. TK Holdings, Inc., No.
B168634, 2004 WL 2903981 (Cal. Ct. App. Dec.16, 2004) (not certified for
publication).